# The Philadelphia Iron and Steel Company *versus* Davis.

Where machinery is held together by two clamps, which are improper appliances and make the use of the machinery dangerous, and one of these clamps breaks, and the engineer continues to run the machinery with but one clamp, which renders the use of the machinery more dangerous, and this afterwards breaks and injures a workman, engaged in the same general business, the employer is not responsible ; for the proximate cause of the injury was the carelessness of the engineer, who was a fellow servant of the injured man, in running his engine when it was dangerous.

January 29th, 1886. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas, No. 1, of *Philadelphia county :* Of July Term, 1885, No 60.

This was an action on the case by F. Marion Davis against The Philadelphia Iron and Steel Company to recover damages for injuries sustained through the alleged negligence of the defendant.

[Philadelphia Iron and Steel Co. *v.* Davis.]

The first count of the *narr* was for bodily injuries to plaintiff by breaking of a fly-wheel constructed by defendants in a ".careless, unskillful, and unworkmanlike manner."

The second count was for like injuries by breaking of a fly-wheel out of repair, and " carelessly, willfully, and negligently " allowed by defendants to remain out of repair.

The third count was for like injuries by breaking of a fly-wheel repaired by defendants in a " careless, unskillful, and unworkmanlike manner."

The plea was not guilty, with leave, &c.

The following were the facts of the case as they appeared on the trial before BIDDLE, J.:

Defendants owned and run a large establishment for rolling iron and steel on North Delaware avenue above Poplar street, in the city of Philadelphia. The trains of rolls or small mills were operated by steam-engines, and each train was, when in operation, attended by a gang of workmen, consisting of a roller, two ruffers, a heater, and a helper, who were paid by the ton of iron rolled. The regular heater of one of the gangs was sick, and the roller sent for plaintiff, who had formerly worked as a heater in another mill in the neighborhood, to come and take his place, on Friday morning, June 27th, 1878. He came and worked on Friday, and after an intermission resumed work at one o'clock Saturday morning, and continued to work until between two and three o'clock, when one of two iron .clamps which jointly assisted in holding a fly-wheel and cog-wheel more firmly together, broke and flew off and imbedded itself with a great crash in the brickwork of the fly-wheel pit. Some of the gang working at this eight-inch mill set to work to pry the broken clamp out of the brickwork, which they succeeded in accomplishing in about fifteen minutes. The superintendent of the works was on duty in the building that night, but did not know and was not informed of the accident. On clearing away the debris, the gang, of which the plaintiff formed one, resumed work with the crippled machine.

Up to this time no one had been hurt.

Work continued until between five and six o'clock in the morning, when the remaining clamp gave way under the increased strain, and flying off, struck plaintiff in the forehead, fracturing his skull. He was unable for many months to resume work of any kind, and was permanently disabled from ever afterwards pursuing his regular vocation, and is now subject to epilepsy as a direct result of his injury.

The eight-inch mill at which the accident happened was constructed by James Massey, of Chester, a competent master machinist. On the shaft of the engine were a fly-wheel nine feet in diameter, weighing between four and five tons, and a

cog-wheel two and one half feet in diameter, driven up in contact with each other, and keyed to the shaft. After being in operation for two or three years, the fly-wheel worked a little loose and showed a tendency to slide laterally along the shaft. A consultation was had between Mr. Verree, the president of the company and manager of the works, of nearly forty years practical experience in the operation of rolling-mill machinery, the superintendent, Vanhorn, since deceased, the assistant superintendent, Philips, and the blacksmith, Eckman, and as a result of their judgment as to a proper and safe device to prevent the lateral or sliding motion of the fly-wheel on the shaft, two U-shaped bolts of the best puddled one-inch round iron were made and applied about opposite arms of the fly and cog-wheels, clamped tight thereto by means of a flat bar of iron, through which the ends of the U-shaped bolts were passed, and firmly fixed by double jam-nuts, riveted to keep them from working off. The U-shaped bolt at first had three-quarter-inch ends which, six months before the accident, were taken off and inch ends welded on. No granulation of the iron appeared when this was done. The device thus served its purpose for at least two years before the accident, and there was no indication of any danger in the use of it. The whole device, consisting of bolt, bar, and nuts, was in the testimony generally spoken of as a clamp. The breaks of both clamps were in the curves of the bolts.

The defendant presented *inter alia*, the following points for charge:

8. When plaintiff remained at work at the machine, after he knew, or ought to have known, of its defect and weakness, occasioned by the breaking of the first clamp, and without notifying his employers, he assumed the risk attendant on the use of such machine, and your verdict must therefore be for defendants. Refused. (Fifteenth assignment of error.)

9. As the defect in the machine in this case, caused by the breaking of the first clamp, occurred in the dead of night, when the employers were absent from the works, it was contributory negligence on the part of the employés, including plaintiff, to continue operations with the partly crippled apparatus, without notifying the acting superintendent of the condition thereof, and no recovery can be had against the employers under such circumstances. Refused. (Sixteenth assignment of error.)

10. A company is in no sense an insurer of the lives or limbs of its servants. It is bound to guard only against probable dangers, but not against merely possible ones; and it has a right to place a reasonable dependence on the care and skill of its servants in the matter of their own preserva-

[Philadelphia Iron and Steel Co. *v.* Davis.]

tion and safety, and, if plaintiff failed to regard the warning given by the breaking of the first clamp, or failed to exercise reasonable care, he assumed the risk of that which followed, and he cannot recover in this case. Refused. (Seventeenth assignment of error.)

12. Since the president of the company, defendant, himself a practical roller, exercised his best judgment, and satisfied the judgment of other experienced persons, in placing clamps upon the machine and subjecting himself to the risk attendant upon the use of the machine, there was no negligence on the part of defendants, and the verdict must be for defendants. Refused. (Eighteenth assignment of error.)

13. On the evidence in this case the verdict must be for defendants. Refused. (Nineteenth assignment of error.)

In the general charge the court instructed the jury, *inter alia*, as follows: [The second point made by the defendant is, that as the engine was run by the engineer, after one of the clamps was broken, without an order from the superintendent, this would be negligence of a co-laborer, and the company would not be responsible. If the evidence satisfies you that the machine was safe with two clamps, and the accident happened from the use of one, this I think would be so, as a matter of law; but the plaintiff's effort has been to show that it was dangerous with both clamps on. If you should therefore believe that the use of the machinery was dangerous, with either one or two clamps, the plaintiff would not be defeated because it was more dangerous with one.] (Fourteenth assignment of error.)

It is true, that a master is not liable to his servants for injuries to them produced by the negligence of a fellow-servant engaged generally in the same business, provided there be no negligence in the appointment of such negligent servant, or in the retention of such servant after notice of his incompetency.

Verdict for the plaintiff for $20,000. A rule for a new trial was granted, which was discharged on plaintiff's consenting to a reduction of the verdict to $10,000. Judgment was accordingly entered upon the reduced verdict for $10,000, whereupon the defendant took this writ assigning for error the refusal of his points as above shown and that portion of the general charge included in brackets.

*J. Cooke Longstreet* and *J. Fletcher Budd*, for plaintiff in error.—The general question arising under the specifications 14, 15, 16, 17, and 19, is whether a workman in presence of a machine that has been crippled by the breaking of one of its parts, is or is not guilty of contributory negligence in continuing to work at the crippled machine without the order of the

[Philadelphia Iron and Steel Co. v. Davis.]

master. These facts are undisputed, that between two and three o'clock in the . morning one of the only two clamps attached to the machine broke; that the plaintiff knew of this breakage; that after the debris was cleared away, plaintiff continued to work in presence of the crippled machine, started up without the orders of the master or his immediate representative who was within call; between five and six o'clock another clamp broke and injured plaintiff. The reason why plaintiff and the rest of the gang chose to take the risk was that they were paid not by time but by the ton.

This question is conclusively answered by Sykes v. Packer, 3 Out., 465; R. R. Co. v. Bresmer, 1 Out., 103; Patterson v. P. & C. R. R. Co., 26 P. F. S., 389; Baker v. Allegheny R. R. Co., 14 Norris, 211.

There is no evidence that the roller ordered the plaintiff below to continue work after the first breakage, but had it been so the rule as laid down in Lehigh Valley Coal Co. v. Jones, 5 Norris, page 432, that workmen are fellow-servants, although the one injured may be inferior in grade and subject to the control and direction of the superior whose act caused the injury, providing they were both co-operating to effect the same common object, applies. And see also Del. & Hud. Canal Co. v. Hudson, 8 W. N, C., 49. It would but needlessly cumber the case to cite authorities out of Pennsylvania, or to multiply citations of cases similar in principle to those already cited from our own reports.

*George S. Graham* for defendant in error.—As to the 14th assignment:

This assignment of error involves the question of the contributory negligence of the co-laborer, the engineer in charge of the engine; but defendant below abandons this position.

The master is liable for defective machinery, although the negligence of a fellow-servant contributed to the injury: McMahon v. Henning, 1 McCrary, 516; Kain v. Smith, 25 Kansas, 146; Cone v. Del. & C. Ry., 81 N. Y., 206; Laning v. N. Y. Cen. Ry., 49 N. Y., 521; Flike v. Boston & Alb. Ry., 53 N.Y., 550; Fuller v. Jewett, 80 N. Y., 46; Grand Trunk Ry. v. Cummings, 16 Otto, 700.

The remaining specifications involve the consideration of the question of contributory negligence.

*a.* The rule of law in Pennsylvania,. which exempts the master from responsibility to the servant for injuries received from the ordinary risks of his employment, including the negligence of his fellow servants, does not excuse the employer from maintaining suitable instrumentalities for the performance of the work required. The master is liable for negligence

in maintaining unsuitable machinery, tools, etc.: P. and N. Y. Canal Co. *v.* Leslie, 16 W. N. C., 321; Johnson *v.* Bruner, 11 P. F. Smith, 58; L. & B. Railroad Co. *v.* Doak et al., 2 P. F. Smith, 379; Ford *v.* Railroad, 110 Mass., 240; P. W. & B. Railroad *v.* Keenan, 7 Out., 124; Murphy *v.* Crossan, 2 Out., 495; Mullen *v.* Steamship Co., 28 P. F. Smith, 26; Schall *v.* Cole, 11 Out., 1.

*b.* One who enters the employment of another has a right to count on the performance of this duty by the master, and to assume that such precautions as were reasonably necessary, for his protection and safety were taken by the master: Schall *v.* Cole, *supra.*

*c.* A master is liable to his servants for the injuries sustained by them through the negligence of a middle man under whose absolute control he places them: Mullen *v.* Steamship Co., 28 P. F. Smith, 26.

Mr. Justice GORDON delivered the opinion of the court February 15th, 1886.

A careful examination of the nineteen assignments of error which have been presented for our consideration leads us to the conclusion that there is but one that requires serious attention. The one to which we refer is the fourteenth, and involves an exception to that part of the charge of the learned judge of the court below which reads as follows : " The second point made by the defendants is that as the engine was run by the engineer, after one of the clamps had broken, without an order from the superintendent, this would be negligence of a co-laborer, and the company would not be responsible. If the evidence satisfies you that the machine was safe with two clamps, and the accident happened from the use of one, this I think would be a matter of law; but the plaintiff's effort has been to show that it was dangerous with both clamps on. If you should, therefore, believe that the use of the machinery was dangerous with either one or two clamps, the plaintiff would not be defeated because it was more dangerous with one." Whilst the well-established principle is here recognized that if the plaintiff's injury was caused by the negligence of a co-employé, the employer could not be made responsible for the resulting damage, yet it is, at the same time, held that if the two clamps were improper appliances, and the machine when held together by the united strength of both was dangerous, the engineer would be justified in continuing to run it after the breaking of one of the clamps. But upon what kind of hypothesis is this idea founded? The court seems to have entertained the opinion that as the machine was dangerous in its best estate, it could be no more so even when

crippled, hence the engineer was justified in continuing its use, though he saw, and ought to have known, that it was about to go to pieces. We cannot understand a conclusion of this kind, for if the two clamps were insufficient to hold this four-ton balance wheel to its place, it seems to us that any one, however inexpert, might have known that when one had broken the other was all the more likely to be unable to support the additional strain that must, in the nature of things, come upon it.

Beside this, we do not understand that the wheel or other part of the driving apparatus was dangerous. The only fault found with this balance was its inclination to slip slowly along its shaft, but the result of this defect was not regarded as likely to be productive of any serious consequence, and only amounted to this, that when the wheel had slipped so far as to interfere with the wall of the pit, in which it revolved, it must be driven back to its proper position. The design of the clamps was to prevent this slipping, and they were necessarily subjected to a great strain, and the danger, as the result proved, lay in the bursting of these appliances. Now, had the injury to the plaintiff occurred in the breaking of the first clamp the responsibility would have rested altogether with the defendant, for it could not have charged its engineer with a knowledge of the unsafety of an appliance which had been regarded as sufficient by its superintendent. But such was not the case; the first clamp broke in such a position that it did no injury; nevertheless, that breaking, which compelled the stopping of the engine, and a removal of the broken iron which had embedded itself in the wall of the pit, gave the engineer notice of two things: (1.) That as the whole strain which had been borne by both clamps must now come upon the remaining one, he might expect, and that in a very short time, a recurrence of the previous accident. (2.) That if the second clamp should break when, by the revolution of the wheel, it was above the edge of the pit, the result would be its violent projection into the open mill among the workmen. Under such circumstances as these we cannot resist the conclusion that the proximate cause of the plaintiff's injury was the carelessness of a fellow-workman, and if so, the defendant cannot be charged with the resulting damage. We cannot perceive that Davis himself was in any degree negligent, hence we refuse to sustain any of the assignments of error which assume carelessness on his part. He was attending strictly to his own business; he was neither a machinist nor engineer, so that even had he known of the breaking of the first clamp it does not follow that he would have been aware of the slightest danger. He had a right to rest upon the sup-

[Wistar *v.* City of Philadelphia.]

position that the company's engineer was a person qualified for the position, and that he would not negligently run his engine when it was dangerous. But if he has suffered by the default of that fellow employé, to him must he look for compensation, and not to the company.

The judgment is reversed, and a new *venire* ordered.