## WILLIAM HANDLEY, APPELLANT, *v.* THE DALY MINING CO., RESPONDENT.

FELLOW SERVANT — LIABILITY OF MASTER—CONCURRENT NEGLI-
GENCE OF SERVANT AND MASTER—INTERVENING NEGLIGENCE—
DIRECTING VERDICT.

1. Plaintiff, a miner, was injured by the concurrent acts of a fellow miner, who negligently left an obstruction in the shaft of a mine, and by the engineer, who negligently allowed the cage to strike the obstruction. Evidence was introduced to show that the engineer's incompetency caused the injury complained of, and to further show that for a number of years he had been habitually negligent, and had been guilty of acts of incompetency, and that these acts were known to the defendant, or could have been known by the exercise of due care on its part. At the close of the case, the court directed a verdict for the defendant. *Held*, that as there was some testimony tending to show the incompetency of the engineer, and that defendant was negligent in keeping him in its employ after it had knowledge of his incompetency, and where the negligence of an employer and that of a fellow servant combine to produce the injury of a servant, the employer will be liable in damages to the injured servant.

2. *Held*, also, that it was error in the trial court not to submit the evidence to the jury.

3. Where an injury is the result of two concurring causes, and the master is responsible for or contributed to one of them, he is not exempt from liability because a fellow servant, who is responsible for the other cause, may have been also culpable. The servant assumes the risk and negligence of a fellow servant, but not that of the master.

(No. 759. Decided June 5, 1897.)

Appeal from the Third district court, Salt Lake county. Hon. Ogden Hiles, *Judge.*

Action of tort by William Handley against the Daily Mining Company for injuries sustained by plaintiff while employed in defendant's mine. From a judgment for defendant plaintiff appeals. *Reversed.*

This is an action brought by the plaintiff to recover damages for an injury received by him while at work for the defendant in its mine. The complaint alleged negligence on the part of the defendant; that, by and through its station tender it negligently left the trips or chairs in the shaft of the mine extended into the shaft, so as to form an obstruction to the descending cage, upon which the plaintiff was descending into the mine; and that the cage struck thereon, and the plaintiff was injured; also negligence on the part of the engineer in operating said cage in a careless manner; also negligence in keeping in its employ the engineer then in charge of the engine, one Adamson, he being an incompetent and careless engineer, and that he was kept in the employ of the said defendant after it knew and it was understood that he was careless and incompetent. Due care on the part of the plaintiff was alleged. The answer denied all the allegations of the complaint. The testimony on the part of the plaintiff tended to show that he was a miner, employed in defendant's mine, and had been employed for a month prior to the date of the injury; that defendant had a perpendicular shaft, about 1,000 feet deep, with 10 levels about 100 feet apart, with a station on each level. The shaft had two apartments, known as the east and west apartments. At each station there were trips or chairs built, consisting of four pieces of iron fixed in a frame, so as to extend into the shaft, and constitute a rest or platform for the cage, when lowered for freight. These chairs are so arranged as to be thrown back by a lever, which is con-

trolled by the station tender, whose business it is to indicate, by means of a bell at the top, to the engineer, and direct him when to raise and lower the cages. The station tender adjusts the chairs accordingly. The cages in each department of the shaft weigh a ton, and are connected with the engines by a flat iron rope, up the shaft, over a pulley, and down the reel to the engine. The reels attached to each cage are so arranged that, when one is lowered, the other will rise. A steam engine furnished the power, and was operated by an engineer, and was adjusted to steam power and a system of brakes; the steam being applied by a lever, and the brakes applied by the feet. At the time of the accident, Patrick Breen was station tender, Adamson was engineer, and Quinn was foreman of the mine. Plaintiff was employed as a common miner on the stope below the ninth and tenth levels. Breen, the station tender, was at work on the 700-foot level, filling cars on the cage in the east compartment, and had sent them to the surface. The cage was raised off the chairs in the seventh level, and Breen forgot to throw the lever and draw the chairs out of the shaft, thereby leaving a permanent obstruction in the shaft to any cage coming down from above. Breen then went to the 800-foot level, the west cage was lowered to him, and he waited for workmen, and placed them on the cage on the west compartment, and gave the signal to be raised to the surface. The cages were so adjusted that, when the west compartment cage was lifted to the surface, the east compartment cage would go to the 800-foot level, below the 700-foot level, which was obstructed by the chairs. As the west cage went up, the east cage came down, and struck with great force on the protruding chairs. Breen heard them strike, and thought it was a blast from the 1,000-foot level, 200 feet below, not then

thinking that he had left the chairs protruding in the shaft. The engineer, after the cage struck the chairs, continued to raise the west cage, and pay out the cable on the east cage, supposing it had reached the 800-foot level, as shown by the indicator, and did not know that it had met with an obstruction. The west cage in the meantime was filled with workmen on the surface, and the engineer let them down the west compartment by means of the foot brake, which was used when there was a load on one cage, which would overbalance the empty cage going up on the other side. The slack cable which was resting on the east cage and which weighed about two tons, was taken up until the cage was reached, when it was jerked off the chairs, and brought to the surface, the west cage descending to the 1,000-foot level. The engineer, supposing, as he says, that the east cage was at the 800-foot level, where the station tender was, tried to communicate with him by means of shaking the cable, but received no reply. He then tried to attract his attention by raising and lowering the east cage, but again received no reply. The shift boss opened the cage, and the plaintiff, with other workmen, got upon the east cage, to be carried to their work, the west cage coming from the bottom empty. As the east cage was about to start down, the engineer received a signal to stop the up-coming cage on the 800-foot level, but disregarded the signal, and sent the men down on the east-side cage, as he had sent the men down on the west-side cage a short time before, using the footbrake for the purpose. The east cage, in which plaintiff was, descended at the usual rate of speed until it came to the 700-foot level, where the chairs formed a solid obstruction. The cage struck said chairs, the shock causing the injury to plaintiff, for which this action is brought.

The engineer testified that he did not know the chairs were in the shaft until he let plaintiff down; that, when the cage struck the chairs, he felt a perceptible shock vibrating through the machinery. Testimony was offered tending to show that a competent engineer would know when the east cage descended upon the chairs the first time, that there was an obstruction there; and that, when the cage was raised off the chairs by a sudden jerk, he should have known it. Evidence was also offered tending to show that the general reputation of Adamson, the engineer, was that of an incompetent and careless engineer before this accident, for several years; that he had several accidents in the same mine before, one of which resulted in the death of two or three miners, and that he had been laid off by defendant on account of such accident for a short time; that, five years before the accident, Quinn, who was then shift boss, and at the time of this accident superintendent of defendant's mine, had stated that Adamson was no good, because he was not a good engineer. Adamson was brother-in-law to the chief engineer of defendant, by whom he was hired. Other testimony was offered tending to show that the engineer did not pay proper attention to bells and signals, and would sometimes run cages to the wrong station, one witness testifying that he had done so about 100 times in 5 years. At other times he would take the cages away without signals. Several accidents happened in the mine while he was engineer. A year prior to this accident, broken chairs were seen at the bottom of the shaft, and the cage was broken. At another time the cable went down the shaft in a bunch. It was also said of him that he would drop or take up the cage too quickly, and was careless in handling it. Testimony was offered tending to contradict and explain plaintiff's testimony with reference to

the reputation, competency, and carelessness of the engineer. At the close of the case, the court directed a verdict for the defendant. Plaintiff brings this appeal, and claims: (1) That the testimony tends to show that, but for the incompetency and carelessness of Adamson, the engineer, the accident would not have happened, and that his incompetency and carelessness were a concurring cause of the accident, and without which it would not have occurred. (2) That the testimony tended to show that the carelessness and negligence of the defendant in keeping Adamson in its employ after it had knowledge of his incompetency, and the carelessness of Breen in leaving the chairs protruding into the shaft, were concurrent efficient causes of the injury to the plaintiff. (3) That the defendant is liable for its negligence directly contributing as an efficient cause to the injury, even though the negligence of a fellow servant also contributed thereto.

*Brown, Henderson & King,* for appellant.

The employer is liable if he knows or could know in the exercise of reasonable diligence of the unfitness of a fellow servant. Bailey on Master's Liability for Injuries to Servant, 47; 2 Jaggard on Torts, 998-999; 25 Lawyers Rep. Anno. 710-717, note; *Laning* v. *Railway Co.,* 49 N. Y. 521; *Rummell* v. *Dilworth,* 111 Pa. St. 349; *Railroad Co.* v. *Dolan,* 32 Mich. 513; *Banlic* v. *R. R. Co.,* 59 N. Y. 356; *Coppins* v. *R. R. Co.,* 122 N. Y. 563; *R. R. Co.* v. *Stupaak,* 123 Ind. 210; *R. R. Co.* v. *Hoover,* (Md.) 29 At. Rep. 994.

While the presumption is that the master has exercised proper care in the selection and retention of the servant, and it is incumbent upon the party charging negligence in this respect to show it by proper evidence, yet this may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master or com-

pany, or by showing them to be of such a nature, character, and frequency that the master in the exercise of due care must have had them brought to his notice. Bailey on Master's Liability, 55-57; *Railway Co. v. Gilbert*, 46 Mich. 179; *Railway Co. v. Ruby*, 38 Ind. 294; *Couch v. Watson Coal Co.*, 17 Iowa 286; *Baulic v. R. R. Co.*, 59 N. Y. 356.

On the general reputation of the servant before the time of the accident see *Manahan v. City of Worcester*, 150 Mass. 439; *Railroad Co. v. Stupaak*, 123 Ind. 210; *Ill. Central R. R. Co. v. Jewell*, 46 Ill. 99; *Western Stone Co. v. Whalen*, 151 Ill. 472; *Railroad Co. v. Hoover*, 25 Lawyer's Rep. Anno., 710. The negligence complained of upon this branch of the case was in keeping Adamson in the employ of the defendant after it knew that he was an incompetent and careless engineer, and that his inefficiency and carelessness contributed to the injury. The carelessness of Breen in leaving the chairs in the shaft was not an *intervening* cause. Bailey on Liability of Master, 436-439; *Railway Co. v. Kellogg*, 94 U. S. 474; *Atkinson v. Goodrich Transportation Co.*, 60 Wis. 141; *Lake v. Milliken*, 62 Me. 240; *Pastene v. Adams*, 49 Cal. 87; *Johnson v. Tel. Co.*, 48 Minn. 433; 1st Jaggard on Torts, 68-74; *Railway Co. v. Cummings*, 106 U. S. 700; *Hays v. Railroad Co*, 111 U. S. 228-241.

Where the negligence of the defendant and the negligence of the fellow servant each contribute to the injury, the master is liable. Bailey on Liability of Master, 439-443; *Railway Co. v. Cummings*, 106 U. S. 700; *Ry. Co. v. Callaghan*, 56 Fed. Rep. 988; *Harriman v. Ry. Co.*, 45 Ohio St. 11-32; *Lane v. Atlantic Works*, 111 Mass. 136; *Griffin v. R. R. Co.*, 48 Mass. 143-145; *Booth v. R. R. Co.*, 73 N. Y. 38; 2 Jaggard on Torts, 1051-1052; *Craver v. Christian*, 36 Minn. 413; *Stringham v. Stewart*, 100 N. Y. 516; *Pullman Car Co. v. Lack*, 143 Ill. 242.

*Bennett, Harkness, Howat & Bradley* and *H. J. Dininny,* for respondent.

The true rule of law is, that negligence to be a concurrent cause must be such as without it the accident would not have happened. *Taylor* v. *Yankee,* 11 N. E. Rep. 642; *Hunt* v. *Pownal,* 9 Vt. 411; *Winship* v. *Enfield,* 42 N. H. 197; approximate cause, see: *Lapline* v. *Morgan,* 1 L. R. A. 378; *W. Mahoney Tp.* v. *Watson,* 112 Pa. St. 344; *South Side Pass. Ry.* v. *Trich,* 117 Pa. St. 390; *Western Ry. of Ala.* v. *Mutch,* 38 Am. St. Rep. 179; Wharton Neg., sec. 75; *Dickson* v. *Omaha Ry.,* 46 Am. St. Rep. 429, note; *Behling* v. *Ry.,* 40 Am. St. Rep. 724; *Taylor* v. *Baldwin,* 78 Cal. 517; *Picket* v. *Wilmington, etc., Ry.,* 53 Am. St. R. 611; *Holland* v. *S. P. Ry.,* 100 Cal. 240; *Stephen's Ry.,* 100 Cal. 554; *Trewatha* v. *Buchanan,* 96 Cal. 494.

To render negligence the proximate cause of an injury, it must be the natural and probable consequence of the negligence; such consequence as under the surrounding circumstances might and ought to have been foreseen by the wrongdoer. *Yoders* v. *Tp.,* 51 Am. St. Rep. 750; *Knox* v. *Eden Musee,* 51 Am. St. Rep. 700. A person is not negligent in failing to provide against a danger that could not have been reasonably expected. *Russell* v. *Monroe,* 47 Am. St. Rep. 823.

Breen's duty was that of operation, that is, the use of the appliances furnished by the defendant; if he used them in an improper way so that his fellow workman was injured, defendant is not liable. *Soderman* v. *Kemp,* 40 N. E. Rep. 212; *Herman* v. *Mill Co.,* 71 Fed. Rep. 853; *Hudson* v. *Ocean S. S. Co.,* 17 N. E. Rep. 342; *Judson* v. *Olean,* 22 N. E. Rep. 555; *Burns* v. *Sennett,* 99 Cal. 363; *Pauling* v. *Hoskins,* 132 Pa. St. 617; *Ry.* v. *Seper,* 47 Pac. Rep. 287; *Daniels* v. *Ry.,* 152 U. S. 368; *Collins* v. *Ry.,* 14 N. W. Rep. 60.

When facts are undisputed the question of proximate cause is for the court. *W. Mahoney* v. *Wilson,* 116 Pa. St. 344; *Harris* v. *Cameron,* 29 Am. St. Rep. 891; *Latremouville* v. *Ry.,* 63 Vt. Rep. 336; *Bunting* v. *Hogsett,* 23 Am. St. Rep. 192; *Quebell* y. *Ry.,* 7 Utah 122; *Fagundes* v. *Ry.,* 79 Cal. 97.

MINER, J. (after stating the facts):

Plaintiff was a miner, taking out ore. Breen was in the same department, loading ore on the cage, and had no control of the plaintiff. Both were under the same foreman, in the same department of labor. They were therefore fellow servants. It is the duty of a master to exercise due and reasonable care in the selection of his servants, with reference to their competency and fitness. He must also exercise the same degree of care in retaining his servants after such employment, for his responsibility is the same. The employer's liability for injuries caused by the incompetency of a fellow servant depends upon such incompetency being established by affirmative proof, and that it was known to the master, or that, if he had exercised due and proper diligence, he would have learned of such incompetency. In exercising this supervision by the master, to ascertain whether the servant is competent, the nature of the service and the dangers attending it should be considered. A closer supervision over the habits, competency, and conduct of an engineer is required than over a common laborer, for the obvious reason that the dangerous consequences of neglect are likely to be so much greater in the one case than in the other; the rule being, the greater the danger, the greater the care. It is the duty of the party charging incompetency and negligence to establish the fact by proof. This may be done by showing specific acts of incompetency,

and bringing them home to the knowledge of the master, or by showing such acts of incompetency and negligence of the servant to be of such a character and frequency that the master, in the exercise of due and reasonable care, must have had them brought to his notice. After proof of incompetency of the servant is shown, the fact of incompetency may also be shown by the general reputation; but, when reputation alone is relied upon, it should be so generally known that inquiry would disclose it. When repeated acts of carelessness are shown on the part of the servant, it then becomes proper to leave the question to the jury to determine whether or not they did come to the knowledge of the master, or would have come to his knowledge had he used reasonable care. Bailey on Mast. Liab. pp. 47-61; *Monahan* v. *City of Worcester*, 105 Mass. 439; *Hilts* v. *Railway Co.*, 55 Mich. 444; *Loning* v. *Railroad Co.*, 49 N. Y. 521.

It is apparent from the facts above stated that the injury would not have happened but for the negligence of the station tender in leaving the chairs in the shaft, and of Adamson, the engineer, in not discovering the fact. These two acts contributed to cause the accident. Without these two concurrent acts the accident would not have happened. The question now arises, did the incompetency of Adamson and his carelessness contribute, in a legal sense, to the cause of the injury? Bailey, Mast. Liab. p. 433, states the rule to be: "When the injury is the result of two concurrent causes, one party is not exempt from full liability, although another party was equally culpable." Whart. Neg. § 144, states the rule to be: "The fact that another person contributed, either before the defendant's interposition, or concurrently with such interposition, in producing the damage, is no defense." Care must be taken in applying the rule to dis-

tinguish between concurring causes and intervening causes. "The negligence of each person is a proximate cause where the injury would not have occurred but for that negligence; and it is no answer that the negligence or trespass of a third person contributed to the injury. And this is true although the party contributing by his negligence was acting without concert with, and entirely independent of, the party to whom the cause is attributable in the first instance. The reason of the rule lies in the fact that the effects produced by two or more concurrent causes cannot be separated, and the damages apportioned; that, because such may be the case, the injured party should not be refused redress. The rule always has been, in case of joint tort feasors, that either or all are liable." In case the injury is caused by accident, and the defendant's negligence concurs to the extent that the accident would not have happened but for such negligence, he is liable for the consequences. "The distinction between concurring causes and intervening causes lies, not so much in the character of the act done or omitted, but its effect upon the result,—the difference between contribution and cause and effect; and to this it must be added that the concurrent or succeeding negligence must break the sequence of events to make the cause one of intervention. The only available test is, did the intervening cause, whether animate or inanimate, break the sequence of events? If so, it is a case of intervening negligence; otherwise, a case of co-operating, concurring, or contributory negligence." Bailey, Mast. Liab. pp. 435, 436; *Illidge* v. *Goodwin*, 5 Carr. & P. 190; Cooley, Torts, 153; *Eaton* v. *Railroad* Co., 11 Allen, 500; *Railroad Co.* v. *Kellogg*, 94 U. S. 474; *Atkinson* v. *Transportation Co.*, 60 Wis. 141; *Railway Co.* v. *Cummings*, 106 U. S. 700; *Johnson* v. *Exchange Co.*, 48 Minn. 433. In *Wright* v. *Southern Pac.*

*Co.,* 13 Utah 381, this court held "that, when the negligence of the employer and that of a fellow servant combine to produce an injury to a servant, the employer will be liable in damages to the injured servant." Shearm. & R. Neg. p. 187; Bailey, Mast. Liab. p. 439.

The facts found in the case on the part of the plaintiff must be deemed to be admitted for the purpose of this discussion, as the case was not submitted to the jury. The negligence complained of in this respect was in keeping Adamson in the employ of the defendant after it knew or was chargeable with notice that he was an incompetent and careless engineer, and that his negligence and inefficiency contributed to cause the injury. The first act of negligence was on the part of Breen, who left the chairs in the shaft. The act of Adamson, the engineer, was subsequent in point of time, yet his act of negligence, if it was such, was continuing negligence, which cooperated and acted with the negligent acts of Breen to produce the common result complained of. Although Breen was negligent, yet if the defendant was chargeable with notice of Adamson's incompetency, and, through his negligence, was therefore wanting in ordinary care and prudence in discharging its duties, and such want of ordinary care contributed to produce the injury in question, and the plaintiff did not know of such want of ordinary care and prudence on the part of the defendant, then the defendant would be liable. The mere fact of the concurrence of one who stands in the relation of a fellow servant and the one receiving the injury does not excuse the master from his contributory negligence. The injury was the result of two concurring causes, and if the defendant is responsible for or contributed to one of these causes, he is not exempt from liability, because Breen, who is responsible for the other cause, may have been

also culpable.    The servant assumes the risk of the negli-. gence of the fellow servant, but not that of the master. *Railroad Co.* v. *Callaghan,* 6 C. C. A. 205; *Lane* v. *Atlantic Works,* 111 Mass. 136; *Lake* v. *Milliken,* 62 Me. 240; *Railroad Co.* v. *Cummings,* 106 U. S. 700; Bailey Mast. Liab. p. 437.

There was some testimony in the case tending to show the incompetency of Adamson, the engineer, and that defendant was negligent in keeping him in its employ after it had knowledge of his incompetency.    While we express no opinion upon the weight to be given to this testimony, yet we are of the opinion that, under all the facts shown, the case should have been submitted to the jury.    The judgment of the court below is vacated and set aside, and a new trial granted.

Zane, C. J., and Bartch, J., concur.