# FREDERICK STOLL, Respondent, *v.* THE DALY MINING COMPANY, Appellant.

JUDGMENT ON VERDICT — WHEN NOT FINAL.  FINDINGS — EVIDENCE TO SUPPORT — ACTION OF APPELLATE COURT.  PERSONAL INJURIES — ACTION FOR DAMAGES — INCOMPETENCE OF ENGINEER — PROOF OF KNOWLEDGE OF DEFENDANT — BY SHOWING PREVIOUS ACTS OF INCOMPETENCY.  PROOF OF CARELESSNESS — PROOF OF INCOMPETENCY — GENERAL REPUTATION — KNOWLEDGE OF DEFENDANT.  CONCLUSIONS AND OPINIONS OF WITNESSES — WHEN ADMISSIBLE ON ISSUES OF FACT.  PAROL TESTIMONY — SECONDARY EVIDENCE — WHEN NOT ADMISSIBLE.  EVIDENCE OF PRIOR INJURIES — WHEN NOT ADMISSIBLE.  MINER AND ENGINEER FELLOW SERVANTS UNDER COMMON LAW RULE.  MEASURE OF DAMAGES — RESTRICTED TO INJURIES IN ACCIDENT ALLEGED.

1. *Judgment on Verdict — When Not Final.*

   A judgment entered on a verdict is not final while a motion for a new trial is pending.

2. *Findings — Evidence to Support — Action of Appellate Court.*

   Where there is legal evidence to support findings of fact by the jury, this court will not interfere with their determination.

3. *Personal Injuries — Action for Damages — Incompetence of Engineer — Proof of Knowledge of Defendant — By Showing Previous Acts of Incompetency.*

   Where in an action for damages for personal injuries plaintiff relies mainly upon negligence of the defendant company, in knowingly retaining an incompetent engineer through whose negligence he claims to have received his injury, evidence that tended to show the incompetency of the engineer seven years before the accident occurred, taken in connection with proof of a series of acts of negligence, tending to show incompetency, extending over a long period of time, was material for the purpose of showing that defendant knew, or by ordinary diligence would have known, that such engineer was incompetent at the time of the accident.

4. *Proof of Carelessness — Proof of Incompetency — General Reputation — Knowledge of Defendant.*

Evidence, which tended to show that an engineer was careless to such an extent as to increase the risks and hazards of the employment, was proper under an allegation of his incompetency. And evidence that his general reputation was that of a careless engineer was proper as tending to prove knowledge on the part of his employer.

5. *Conclusions and Opinions of Witnesses — When Not Admissible on Issues of Fact.*

The incompetency and carelessness of an engineer being issues in the case, were questions for the jury to determine, and it is error to permit witnesses to state their conclusions and opinions on these questions.

6. *Parol Testimony — Secondary Evidence— When Not Admissible.*

Before parol testimony can be given of the contents of a writing, it must first be shown that the writing itself can not be produced, or its absence must be satisfactorily accounted for; and it is error to allow a witness to testify as to the contents of certain printed rules without first showing a demand or notice on the defendant to produce them, or laying a foundation for secondary evidence.

7. *Evidence of Prior Injuries — When Not Admissible.*

In an action for damages for personal injuries it is error to allow plaintiff to give testimony concerning other accidents and injuries to him prior to the one in question and while in employ of defendant.

8. *Miner and Engineer Fellow Servants under Common Law Rule.*

This action being for injuries received prior to the enactment of the fellow-servant law of 1896, the relation of plaintiff and the engineer was to be determined by the common law rule, and under it they were fellow servants. It was therefore error to instruct the jury that they were not fellow servants.

9. *Measure of Damages — Restricted to Injuries in Accident Alleged.*

It being shown by the record that plaintiff had been in an accident some five months previous to the one in question, whereby he lost the sight of one eye entirely, and the sight of the other was much impaired, and his physical ability was reduced, and his earning capacity lessened thereby, and that the two accidents were in no way connected, it was error on

the part of the trial court to fail to instruct the jury that plaintiff's right to recover was limited to the injuries received in the accident alleged in his complaint.

(Decided April 25, 1899.)

Appeal from the Third District Court, Summit county, Hon. A. G. Norrell, *Judge.*

Action by plaintiff to recover damages for personal injuries.

From a verdict for plaintiff defendant appeals. *Reversed.*

*Messrs. Bennett, Harkness, Howat, Bradley & Richards,* and *W. I. Snyder, Esq.,* for appellant.

There is no need of citation of authorities to sustain the well established rule of law, that parol testimony of the contents of a writing is not competent, until it is shown that the writing itself can not be produced. The rule of law extends to rules for the regulation and government of the conduct of employees. *Georgia, etc., R. Y. Co.* v. *Propst (Ga.),* 7 So., 635; *Railroad Co.* v. *Mc Mullen,* (Ind.), 20 N. E., 287, 291; *Price* v. *Railroad Co.* (S. C.), 17 S. E., 732, 735; *Missouri, etc., Co.* v. *Lamothe* (Tex.), 13 S. W., 194.

The opinion of witnesses on the substance of an issue should never be resorted to, except when the subject is beyond the knowledge or experience of ordinary men. *Walter* v. *Railroad Co.,* 40 Mo. App., 544; *King* v. *Railroad Co.,* 11 S. W., 563; *Central, etc., Co.* v. *Ryles* (Ga.), 11 S. E., 499; *Butter* v. *Chicago, etc., Co.* (Iowa), 54 N. W., 208; *Ft. Worth, etc., Co.* v. *Thompson* (Tex.), 21 S. W., 137.

The mere fact of the happening of an accident is no evidence that it happened through the negligence of any

person.   1 Bailey's Master and Servant, Sec. 1597 *et seq.;*
*Kuhns* v.   *Ry.   Co.,* 31 N. W., 868; *Knight* v.   *Cooper*,
14 S. E., 991; *Brymer* v.   *So.   Pac.   Co.*, 90 Cal., 496.

That evidence of prior injuries not connected with the
injury in question was immaterial and prejudicial, see
*Snowden* v. *P.   V.   Coal Co.*, 52 Pac., 599; *Harrison* v.
*Ry.   Co.*, 7 Utah, 523; *Sanford* v.   *Craig*   (Neb.), 72 N.
W., 854; *Bank* v. *Bradley*, 19 So., 791, 795; *Pa.   Com-
pany* v. *Roy*, 102 U. S., 451.

At the common law the engineer at a mine, who lowers
men to their work and takes up the material which the
miners take from the mine, is a fellow servant of the
miners.   *Bartonshill Coal Co.* v. *Reid*, 3 Macq., 295;
*Spring Valley Coal Co.* v. *Patting*, 86 Fed., 433; *Tre-
watha* v. *Buchanan, etc., Co.*, 96 Cal., 494; *Buckley* v.
*Gould, etc., Co.*, 14 Fed., 833; *Woods* v. *New Bedford
Coal Co.*, 121 Mass., 252; *Philadelphia, etc., Works* v.
*Davis* (Pa.), 4 At., 513; *Mc Charles* v. *Mining Co.*, 10
Utah, 470.

Where the instructions on a material point are con-
tradictory, the judgment will be reversed.   *People* v.
*Anderson*, 44 Cal., 65; *McCreary* v. *Everding*, 44 Cal.,
246; *People* v. *Wong, Ah Ngow*, 54 Cal., 151; *Sappen-
field* v. *Ry.   Co.*, 91 Cal., 48, 59; *Holt* v. *Ry.   Co.*
(Idaho), 35 Pac., 39, 42; *Bleiler* v. *Moore* (Wis.), 69 N.
W., 164; *Wenning* v. *Teeple*, 144 Ind., 189.   Nor was
the erroneous instruction given cured by the giving of a
correct instruction.   *Fitzgerald* v. *Meyer* (Neb.), 41 N.
W., 123; *Baxter* v. *Lockett* (Wash.), 6 Pac., 429; *Sap-
penfield* v. *Ry.   Co.*, 91 Cal., 48, 59.

*Messrs. Moyle, Zane & Costigan*, for respondent.

The first error assigned is as to the admission of evi-
dence as to the posted-up rules in the mine.   It was

shown that the rules were posted up as a placard. They were tacked up on the side of the mine. They were not rules printed in book form like railway rules, and they came within the well-known exception, such as notices on buildings, devices on flags, signs on houses, signs posted up on lots for sale, and other well-known instances. The practice is to assume of such things that they can not be produced. *State* v. *Credle*, 91 N. C., 640; *1 Jones on Ev.*, p. 461, Sec. 204; *Teft* v. *Size*, 10 Ill., 432; *McMillan* v. *Baxley*, 112 N. C., 578.

The counsel did not ask the court to instruct the jury to disregard the evidence. He did not ask for any ruling of the court upon the point, he merely took an exception to the remarks. His plain duty was to ask the court to make a ruling and to except to any ruling that was made if adverse to him. He did not do so, and he has no right to complain now. *Worley* v. *Moore*, 97 Ind., 15; *Carter* v. *Carter*, 101 Ind., 451.

### STATEMENT OF FACTS.

The plaintiff brought this action to recover for personal injuries alleged to have been sustained by him while in the employ and service of defendant as a common miner in its mine. He bases his right to recover on the ground that defendant negligently employed and knowingly retained in its service an incompetent engineer to run and manage the engine used to lower and raise the cages in a double compartment shaft in its mine.

The complaint alleges that the plaintiff received the injuries complained of while being lowered into the mine in one of the cages when the alleged incompetent engineer was running the engine. And that the accident which was the cause of the alleged injuries was due to the incompetency of said engineer. The defendant by its an-

swer denies all the material allegations of the complaint, and alleges that if plaintiff was injured, it was through and by the negligent acts of a fellow servant, and of which negligence the defendant had no knowledge.

The record, in brief, discloses about the following state of facts: The accident in which it is alleged plaintiff received the injuries complained of occurred in defendant's mine known as the Daly Mine, at 7 o'clock on the morning of December 6, 1895, and before daylight. The shaft in which the accident occurred was a double compartment shaft, and when a cage was being lowered in one compartment, a cage in the other compartment would be raised, one cage acting as a counterbalance to the other. The shaft was intersected by a tunnel on the 800-foot level of the mine, through which tunnel the men entered and left the mine on going to and returning from their work. On entering the mine through this tunnel on the morning in question, the plaintiff, with several of his colaborers, was hoisted to the surface in the west compartment cage, and the empty cage in the east compartment was lowered to the 700-foot level, where it came in contact with a set of trips, or chairs, which had been left across the shaft, making a solid obstruction. These trips, or chairs, are made of iron, and a set is on each level of the mine. They are thrown across the shaft by means of a lever, and are used for the cage to rest on when placing cars on or pulling them off the cage.

Patrick Breene, a fellow servant of plaintiff, was the station tender, and it was his duty to manipulate the chairs, put loaded cars on to the cage, and pull empty cars off. Just prior to the accident Breene was on the 700-foot level, and sent up two cars on the cage in the east compartment of the shaft, and the west cage came down, and he went up on top in that cage, leaving the trips, or

chairs, extending out into the shaft on the east side, having forgotten to pull them back, thereby leaving a solid obstruction in the east compartment of the shaft.    Soon after arriving on the top he returned in the west cage to the 800-foot level, and waited there until the plaintiff and his co-laborers came into the mine through the tunnel to go to work. The plaintiff and his co-laborers got on to the west cage, and were hoisted to the top as stated above.    As they went up, the east cage came down, and when it reached the 700-foot level, struck the chairs that extended out into the shaft making a loud report, which Breene, the station tender, took to be a blast on one of the levels above him.    When the cage struck the chairs and was stopped, Adamson, the engineer, not knowing of the obstruction, unreeled and paid out one hundred feet of cable on top of the cage, supposing that it was being lowered to the 800-foot level.    The slack cable that had thus been paid out on top of the cage was taken up, and the cage raised to the surface and loaded with men, the plaintiff being one of the number, to go to the 1,000-foot level. The cage was then lowered, and when it reached the 700-foot level struck the chairs with great force and was again stopped and caused the alleged injuries to plaintiff for which this action is brought.    After the cage had been thus intercepted by the chairs, Adamson, the engineer, as on the former occasion, continued to pay out the cable, the slack of which rested on the cage.    The cable was a six-inch flat steel cable, and weighed nine pounds to twenty-five and one-half inches.    About twenty-five feet from the engineer on either side was an indicator, the one on the east side showing the position of the cage in the east compartment, and the one on the west side showing the position of the cage in the west compartment.    If the cage, when being lowered, should meet with an obstruction,

and be prevented from going down, and the cable should be paid out, the indicator would not show the position of the cage in the shaft, but would show where the cage would be in the shaft if it had not been caught.  There was a system of bells in each compartment of the shaft, and with these the station tender would signal the engineer to raise and lower the cages.  The number of signals indicated to the engineer what was wanted.  There was a printed rule on each station of the mine containing instructions how to signal, and also two of these printed rules tacked up near the engineer for his guidance, and where it could be constantly seen by him.

Testimony was introduced that tended to show that a competent engineer would have known when the cage was stopped by the chairs.  And that he would have known that something was wrong by the vibration of the cable and the jar of the steam lever when the slack of the cable was taken up and the cage suddenly lifted from the chairs.

Adamson testified that at the time the cage struck the chairs and the plaintiff received the alleged injuries, he felt the jar caused by the cage coming in contact with the obstruction.  There was some evidence introduced that tended to show that Adamson was careless, and on many occasions made mistakes; that he would take away the cages without signals, and would fail to answer signals. On the morning of the accident, and just prior thereto, he raised the east cage out of the shaft from one of the levels without first getting a signal from the station tender; that on one occasion he was suspended and laid off by defendant on account of the manner in which he had managed the cages.  There was some testimony to the effect that he was inexperienced when he was employed and put to work on the engine by defendant, and

that his general reputation during the time he was running the engine was that of an incompetent, negligent, and careless engineer.

The evidence also showed that several accidents occurred in this shaft prior to the one in question, and when Adamson was at the engine running the cages. And on one occasion three men were being lowered into the mine and the cage caught, and Adamson, the engineer, continued to unreel and pay out about three hundred feet of the cable on top of the cage, until the weight of the cable forced the cage loose and it fell to the bottom of the shaft killing the three men.

Plaintiff testified that he had worked in the Daly mine for ten years, but only about four or five weeks under Adamson, before the accident, and at which time he did not know that Adamson was an incompetent engineer.

The evidence for the defendant tended to controvert the testimony of plaintiff's witnesses on the question as to the incompetency, carelessness, and negligence of Adamson, the engineer.

The case was tried by a jury, who, on February 12, 1898, returned a verdict in favor of plaintiff for $5,000 damages. On February 16, 1898, the court made an order granting defendant forty days from date in which to file and serve its notice for a new trial. On March 24, 1898, defendant filed and served plaintiff with notice of intention to move for a new trial. On June 26, 1898, the court overruled the motion, to which ruling the defendant excepted. An appeal was duly taken and perfected September 8, 1898, two months and ten days after defendant's motion for a new trial had been overruled, but six months and twenty days after judgment had been entered on the verdict.

The plaintiff moves this court to dismiss the appeal on

the ground that the appeal was not taken within six months from the time of entry of the judgment on the verdict.

*Mc Carty, District Judge,* after stating the facts, delivered the opinion of the court:

We deem it unnecessary to enter into a discussion of the question raised by respondent's motion to dismiss the appeal, as to whether or not a judgment entered on a verdict is final, while a motion for a new trial, made within the time allowed by law, is pending and undisposed of. In the case of *Watson* v. *Mayberry,* 15 Utah, 265, Mr. Chief Justice Zane, speaking for this court, said: "A judgment terminating the litigation between the parties in the court rendering it is final. The litigation is not terminated while a motion for a new trial, made within the time given by law, may be lawfully decided. Until the order granting or overruling the motion is made, it can not be known that the judgment is final. If the motion is allowed, the litigation may continue. If it is overruled, the litigation is terminated and the judgment then becomes final." This rule is again reaffirmed in the case of *Bear River* v. *Hanley,* 15 id., 506. On the authority of these two cases, which we think correctly state the law, the motion to dismiss the appeal is overruled.

As stated by counsel for appellant in their brief, the questions for the jury were :

1. " Was the accident caused through the negligence of Adamson ?  And we might add, or did his negligence contribute directly thereto ? "

2. " Was Adamson at the time of the accident an incompetent engineer ? "

3. " Did defendant know of Adamson being incompetent, or would it have known it by ordinary care ? " and,

4. "Was plaintiff injured, and if so, the extent of his injuries?"

The jury in arriving at their verdict must necessarily have found for the plaintiff on each of these issues. And as there is legal evidence, as shown by the record, to support such findings, this court is powerless to interfere with the action of the jury in its determination of these questions, even though we might be of the opinion that the weight of the evidence is against such findings. The facts in this case are substantially the same as those in the case of *Handley* v. *Daly Mining Company*, 15 Utah, 176, both actions having been brought to recover for personal injuries resulting from the same accident. The evidence for the plaintiff in support of the foregoing issues is no less conclusive than it was in *Handley* v. *Daly Mining Co.*, *supra*. This court, in reviewing that case held, and we think correctly, that the court erred in taking it from the jury and granting a non-suit.

Defendant assigns as error the admitting of evidence, over its objections, tending to prove that Adamson was an incompetent engineer when he was first employed by defendant, and put to work, running the engine seven years prior to the accident; and that it was error to admit evidence of specific acts of the engineer in his management of the engine and cages tending to prove incompetency, some of which happened long before the accident occurred and some just preceding it. Also that the court erred in admitting evidence that Adamson's general reputation was that of an incompetent engineer.

It was the duty of the defendant to use ordinary and reasonable care in the selection of its engineer. Not only was it the duty of defendant to use due care in the selection of a careful and competent engineer, but it was equally its duty to use ordinary care and diligence in the

retention of such engineer.    And if the defendant failed
in the latter requirement, and plaintiff, without fault or
negligence on his part was injured through the negligent
acts of the engineer, defendant is liable.

The plaintiff, mainly relying for a recovery upon the
negligence of the defendant in knowingly retaining in its
employment an incompetent engineer through whose neg-
ligence he claims to have received the alleged injuries,
evidence that tended to show that Adamson was incompe-
tent seven years before the accident occurred, taken in
connection with the proof of a series of acts of negligence
tending to show incompetency and extending over a long
period of time since his employment and while in the
service of the defendant, was material for the purpose of
showing that defendant knew, or by ordinary diligence
would have known that he was incompetent at the time
the accident occurred.    *Mc Charles* v. *Mining Co.*, 10
Utah, 470; *Railroad Co.* v. *Baugh*, 149 U. S., 369.

" It is incumbent upon a party charging negligence in
this respect to show it by proper evidence.    This may be
done by showing specific acts of incompetency, and bring-
ing them home to the knowledge of the master or com-
pany, or by showing them to be of such a nature,
character, and frequency that the master in the exercise
of due care might have had them brought to his notice."
Bailey Mast. Liab., p. 55; *F. W. & Co.* v. *Ruby*, 38
Ind., 294; *Mich. Cent. Ry. Co.* v. *Gilbert*, 46 Mich.,
179; *Houston & F. Ry. Co.* v. *Patton*, Tex. Sup., 9
S. W., 175.

Evidence of one casual act of negligence or omission of
duty on Adamson's part, standing alone, would be of
little or no value to prove incompetency irrespective of its
remoteness or proximity in point of time to the accident.
The general rule is that a servant's qualifications, fitness,

ability, and disposition to perform the duties required of him in his employment is not determined by one act, but by a series of acts. *Baulic* v. *R. R. Co.*, 59 N. Y., 365; Mc Kinney on Fellow Servants, p. 204; *Springville Coal Co.* v. *Patting*, 86 Fed., 433.

This rule, however, has its exceptions. A single act of negligence may be committed under some circumstances, and in such a manner, as to show, without further proof, the utter incompetency of the servant for the particular service in which he is engaged, as when the act is shown to be intentional, wanton, or malicious, or is of such a flagrant and unusual character that it can only be accounted for on the theory of incompetency.

Appellant further contends that it was error to admit evidence over its objections, showing that Adamson was careless in his management of the engine and cages, and that his reputation was that of a careless engineer, for the reason that the negligence alleged in the complaint and relied upon, is that Adamson was an incompetent engineer, and nothing is said as to his being a careless engineer. It must be conceded that a servant who frequently makes mistakes in his work and is habitually careless and fails to properly attend to the duties of the service in which he is employed, to such an extent that the risks and hazards of the employment are greatly increased thereby, is not a competent man for the work. And any evidence that tended to show that Adamson was this kind of a man was proper.

In *Coppins* v. *Railroad*, 122 N. Y., 557, the rule is stated as follows: "A competent man is a reliable man; one who may be relied upon to execute the rules of the master, unless prevented by causes beyond his control. Hence incompetency exists not alone in physical or mental ability, but in the disposition to perform duties. If

he habitually neglects his duties, he becomes unreliable; and although he may be physically and mentally able to do well all that is required of him, his disposition toward his work and toward the general safety of the work of his employer and to his fellow servants makes him an incompetent man."

Testimony showing that Adamson's general reputation was that of a careless engineer was proper, as it tended to prove, as above stated, that defendant knew, or by the exercise of due care would have known, that he was habitually careless.   And it was for the jury to determine from this testimony, in connection with all other testimony and circumstances in the case, as to whether or not Adamson was incompetent and defendant by reasonable care on its part would have known of such incompetency. *Norfolk & Wes. R. Co.* v. *Hoover*, 25 L. R. A. (Md), 710 and cases cited in note; *Mich. Cent. R. Co.* v. *Gilbert*, 46 Mich., 176.

A witness for plaintiff was permitted to testify, as follows, in regard to Adamson being a careless man:

Q. " Do you know of your own knowledge as to whether or not he was a careless man." A. " He was careless."

Another witness testified as follows:

Q. " Did you have an opportunity to observe what his attainments were in running the hoisting engine, when he was put over them on the Daly ? "

A. " Well, I really did n't think the man was competent, for the reason that he did n't have the experience."

Counsel for the appellant objected to this testimony on the ground that it was incompetent, as it gave the opinions and conclusions of the witness, and not a statement of facts.   The objections were overruled, and exceptions duly taken.

This testimony should have been excluded.   The

alleged incompetency and carelessness of Adamson being issues in the case, they were questions for the jury to determine. It was error to permit the witnesses, over appellant's objections, to state their conclusions and give their opinions on these issues.

"The opinion of witnesses on the substance of an issue should never be resorted to, except when the subject is beyond the knowledge and experience of ordinary men." *Walter* v. *Railroad Co.*, 40 Mo. App., 544; *King* v. *Railroad Co.*, 11 S. W., 563; *Sonnefield* v. *Mayton*, (Tex.), 39 S. W., 682; *Duer* v. *Allen et al.*, 64 N. W., 682; *Bryant* v. *Gillidan*, 39 Mo., 458; *Mc Kean* v. *Railroad Co.*, 55 Iowa, 192.

One of the plaintiff's witnesses was permitted over defendant's objections to testify to the contents of printed rules containing instructions for the giving of signals to the engineer by the station tenders. The rules also directed the engineer when to raise the cages, when and to what level to lower them in answer to signals. The admission of this testimony was error. It was not shown that a demand had been made or notice served on defendant to produce the printed rules, or that any effort was made whatever on the part of plaintiff to procure them, and there is nothing in the record to show that they could not have been produced at the trial. It is an established and well recognized rule of law, that before parol testimony can be given of the contents of a writing it must be first shown that the writing itself can not be produced, or its absence satisfactorily accounted for. 1 Greenleaf on Evidence, Sec. 90; 1 Jones on Evidence, Sec. 200; *Georgia Pac. Ry. Co.* v. *Prepst* (Ga.), 7 So. Rep., 635; *Railroad Co.* v. *Mc Mullen* (Ind.), 20 N. E., 287; *Price* v. *Railroad Co.* (S. C.), 17 S. E., 732; *Mo. Pac. Ry.* v. *Lamothe* (Tex.), 13 S. W., 194.

The record shows that plaintiff had been at work for

defendant in its mine for ten years prior to the accident in question, and he was permitted to testify as follows in regard to injuries he had received prior to the accident in controversy: Q. "Had you ever had any accident happen to you before this? A. Yes, sir. Q. How long before this? A. About five months before this I got blasted and lost one eye entirely, and almost the sight of the other eye. Q. Had you suffered any accident before this? A. I got blasted before that, but did n't get hurt much. After the last accident, where I lost the eyesight of one eye, I did n't go to work again for some time." To each of the foregoing questions, counsel for defendant objected on the ground that it was immaterial and irrelevant. The objections were overruled and exceptions taken. The ruling of the court is now assigned as error. The objections to this testimony should have been sustained, as it was inadmissible for any purpose. The accidents to which it referred had no connection whatever with the one in controversy, and were accidents for which Adamson was in no way responsible. Such testimony tends to prejudice the jury against the defendant, and to unduly influence them and excite their sympathy in favor of the plaintiff. Being collateral and foreign to the case, it also had a tendency to confuse, mislead, and draw the minds of the jury from the real issues in the case. *Snowden* v. *P. V. Coal Co.*, 16 Utah, 336.

The court charged the jury: "That if you find, from a preponderance of the evidence, at the time of the disaster, the plaintiff was in the employ of the defendant company as a miner, engaged in the usual duties of a miner, and that while so employed, and in the line of his duty, he received injuries resulting from the negligence or incompetency of the engineer Adamson, who was in charge of the engine and machinery which lifted the ore from the

mine, lowered the employees into the mine, and lifted them out, then, as a matter of law, the plaintiff and the said engineer Adamson were not fellow servants engaged in the same grade or line of service, the plaintiff would be entitled to recover."

This accident occurred before the enactment in this State of the fellow-servant law of 1896, therefore the relationship of the plaintiff and Adamson as laborers in this mine is to be determined by the common law rule. And unless changed or modified by statute, the rule is well settled that an engineer of a mine whose duty it is to lower men to their work in the mine, lift them out, and take up the material extracted by the miners, is a fellow servant of the miners. *Coal Co.* v. *Reed*, 3 Macq., 295: *Spring Valley Coal Co.*, v. *Patting*, 86 Fed., 433; *Trewatha* v. *Buchanan, etc., Coal Co.*, 96 Cal., 494; *Buckley* v. *Gould, etc., Co.*, 14 Fed., 833; *Woods* v. *Coal Co.*, 121 Mass., 252; *Philadelphia, etc., Works* v. *Davis*, 4 Atl., 513; *Mc Charles* v. *Mining Co.*, 10 Utah, 470.

We refrain from expressing an opinion as to what effect, if any, the fellow-servant act of 1896, above referred to, would have on the foregoing rule if applied to the facts in this case. The construction of that statute is not involved in any way in this action. Plaintiff and Adamson being fellow servants at the time of the accident, in order to entitle the plaintiff to recover, it was necessary for him to prove by a preponderance of the evidence that Adamson was an incompetent engineer, and that the defendant knew, or by due diligence ought to have known, of such incompetency. But if the rule were as stated in the foregoing instruction, the plaintiff would be relieved from the burden of proving the foregoing facts, and all that would be necessary for him to prove in order to recover would be that the accident was the result of Adamson's

negligence. Hence the instruction was erroneous, and the giving of it was error

The court instructed the jury on the measure of damages, as follows: "If you should believe from the evidence that the plaintiff ought to recover, you should then assess in dollars and cents such damages as he actually sustained. In assessing the damage, you should take into consideration the age of the plaintiff, his physical condition, his capacity to earn money, if such facts have been shown by the evidence, the nature of the injuries, if the evidence shows such, and from all the evidence in the case, give to the plaintiff such compensatory damages as you in your conscientious judgment think he ought to have."

The defendant excepted to this instruction, and now assigns the giving of it as error. The record shows that plaintiff, about five months before the accident in controversy, was injured in this mine by a blast, whereby he lost the sight of one eye entirely, and the sight of the other eye was very much impaired. It must be conceded that the injuries received by the plaintiff in this former accident greatly reduced his physical ability and lessened his capacity to earn money, and were injuries to which the accident upon which this action is brought in no way contributed. Therefore the court in its instructions should have limited the right of plaintiff to recover to the injuries received in the accident alleged in his complaint, and having failed to do so, the giving of the foregoing instruction was error.

Defendant has assigned numerous other errors, but we deem it unnecessary to consider them.

The judgment appealed from is reversed, with directions to the trial court to grant a new trial.

BARTCH, C. J., and BASKIN, J., concur.