MICHIGAN CENTRAL R. R. Co. v. MARY L. GILBERT, ADM'X

*Railroad companies—Master and servant—Negligence.*

In an action against a railway company for the death of an engineer in consequence of a collision resulting from the yard-master's negligence in sending him out when a coming train was past due, it was *held* that as bearing upon the competency of the yard-master, questions as to the number of tracks in the depot yard,—the number of engines ordinarily employed in switching,—the average number of freight trains in the yard, and similar questions, were relevant as tending to show the character and importance of the work the yardmaster had charge of, and the need of experience and skill.

The nature of the business determines whether the degree of care exercised by those employed in it is such as the law requires.

The negligence of a servant in a particular instance cannot well be shown by testimony of his incompetency or carelessness on other occasions; but if it is also shown that the master knew of the cases or that they were of such a character and so frequent that he must have known of them, he, the master, may be chargeable with negligence in retaining such servant.

Where an employer has shown due care in the choice of his servants, no presumption of the latter's unfitness arises afterwards; but if it appears that a servant has been repeatedly guilty of carelessness or incompetency it is for the jury to determine whether the master knew of it or would have known if he had exercised ordinary care.

Evidence that a railroad employee is hasty, passionate and excitable does not of itself necessarily show that he is unfit for the post of yard-

master; nor does the mere fact that he has sent an engine upon the track when a coming train was overdue conclusively show that the company was negligent in keeping him in its service, since he might have had information showing that the train would not arrive for some time.

A locomotive engineer's opinion that if he had obeyed the order of the yard-master to place his engine on the main track when a coming train was past due, he would have gotten into trouble, was *held* inadmissible to show that the railroad company was negligent in keeping the yard-master in its employment, unless the case had been brought to the knowledge of the company officers.

Where the officers of a railroad company have had their attention directed to the intemperate habits of an employee, it is their duty to make careful and frequent investigation as to the fact if they retain him in their service. The weight and importance of evidence that they knew of it, is for the jury to pass upon.

Error to Jackson.    Submitted April 26–27.    Decided June 8.

CASE.    Defendant brings error.    Reversed.

*Henry Russel* and *G. V. N. Lothrop* for plaintiff in error. Personal negligence of the master is the gist of an action against him for an injury caused by an employee: *Wright v. N. Y. C. R. R.* 25 N. Y. 566; all that can be required of the master is that he shall choose his servants prudently and shall not retain them after finding them negligent and unfit: *Quincy Mining Co. v. Kitts* 42 Mich. 34; evidence of specific acts of negligence unknown to the master are therefore inadmissible: *Davis v. Det. & Mil. R. R.* 20 Mich. 105; *Mich. Cent. R. R. v. Dolan* 32 Mich. 510; *Priestley v. Fowler* 3 M. & W. 1; *Wilson v. Merry* L. R. 1 Scotch & Div. App. 326; *Keegan v. Western R. R.* 4 Seld. 175; *McMillan v. Sar. & W. R. R.* 20 Barb. 449; *Warner v. Erie Rw.* 39 N. Y. 468; *Ryan v. Fowler* 24 N. Y. 410; *Laning v. N. Y. Cent. R. R.* 49 N. Y. 521; *Chapman v. Erie Rw.* 55 N. Y. 579; *Collins v. Dorchester* 6 Cush. 396; *Robinson v. Fitchburg & W. R. R.* 7 Gray 92; *P. F. W. R. R. v. Ruby* 38 Ind. 294: 10 Amer. 111; *Frazier v. Penn. R. R.* 38 Penn. St. 104; *Det. & Mil. R. R. v. Van Steinburg* 17 Mich. 111; *Grand Rapids & Indiana R. R. v. Huntley* 38 Mich. 540.

*Edwin F. Conely* and *Conely & Lucking* for defendant in error. A master is bound to use reasonable care in ascertaining the qualities of his servants, and to discharge those who are incompetent as soon as knowledge of their incompetency ought to reach him by the use of due diligence: Wood on Master and Servant §§ 416, 417, 420; proof of specific acts of the servant's carelessness is inadmissible, as evidence of his general reputation, to show the master's knowledge of his capacity: *Baulec v. N. Y. & H. R. R. Co.* 59 N. Y. 361.

MARSTON, C. J. On October 10, 1879, a collision occurred on the railroad company's road at Jackson junction, caused by the negligence of the company's yard-master in sending a switch-engine and train of cars upon the main track when the Pacific express train was past due, by which the engineer, Milton Gilbert, in charge thereof, without negligence on his part, and while in the performance of his duty, was killed.

Three principal questions are raised in this court, all relating to the sufficiency of the evidence introduced to establish the several propositions upon which alone the plaintiff would be entitled to recover, and these may be stated in the language adopted by counsel for plaintiff in error in the brief submitted, as follows:

1. That the sending out of the switch-engine upon the main track, whereby the collision occurred, was an act of negligence directly attributable to Evander T. Colwell, a co-employee with Gilbert, who was yard-master at the Jackson junction yard.

2. That Colwell was an unfit and incompetent person to perform the duties of yard-master.

3. That the railroad company knew, or might have known in the exercise of reasonable diligence, that Colwell was an unfit and incompetent person for that position.

The first proposition is not disputed, but the sufficiency of the evidence to establish either of the others is, and questions are also raised as to the competency of some of plaintiff's evidence to establish either.

The questions asked witnesses as to the number of tracks in the yard at the junction; the number of engines ordi-

narily employed in switching; the number of freight trains there on an average, and questions of similar import, were in my opinion relevant and proper, as tending to show the character and importance of the work Colwell was placed in charge of, and that from its extent, the character of the employment and the dangers incident to it, a man of corresponding ability and experience should be found in charge of it placed there by the company.

While we may say as a general proposition that the degree of care required in all cases is that which men of ordinary care and prudence exercise, yet it is to the business itself that we must look when we desire to ascertain whether such care and prudence have or not been exercised in a given case. Ordinary care and prudence, or what might clearly be considered such, in a given case, might if applied in like manner, where the hazard and responsibility was greater, fall far short or be grossly negligent. A man might be fully qualified to act as yard-master at a small unimportant station, who would be wholly unfitted to take charge of a large yard with many tracks and where a large number of trains were arriving and departing each day.

The plaintiff introduced testimony as to special instances of alleged incompetency or carelessness on Colwell's part, and this also is complained of. It was not claimed in support of such testimony, and certainly it could not well be, that it had any tendency to prove that he was negligent in fact on the night of the collision. It was however incumbent on the part of the plaintiff to show, that the company was guilty of negligence in first employing Colwell because unfitted for the position, or in afterwards retaining him. This they could do by showing specific acts of incompetency, and bringing them home to the knowledge of the company, or by showing them to be of that nature, character and frequency, that the company, in the exercise of due care on its part, must have brought them to its notice.

While it is true that when a company has exercised due care and prudence in the choice of its servants, and that where this has been done no presumption of unfitness

afterward arises, yet the master cannot shut his eyes, close his ears, and rest in peaceful security, unconscious and indifferent to what may thereafter take place. A vigilance corresponding in degree to the dangers attending or likely to attend careless management, ever remains on the part of the master, and when the plaintiff has shown repeated instances of carelessness or incompetency of a certain character on the part of the servant, it remains for the jury to determine whether they did come to the knowledge of the master, or would have, had ordinary care been exercised on his part. Any other rule would absolve the master from all danger, if he but exercised due caution in the first place, unless actual knowledge was afterwards brought home to him, which in many cases it would be most difficult to prove. *Davis v. Detroit etc. R. R. Co.* 20 Mich. 124; Cooley on Torts, 559 and cases cited.

Were the specific instances enquired about in the present case of that nature as to bring them within the rule that would by implication bring them home to the knowledge of the railroad company?

The following are some of the questions asked and answered:

*Q.* "What was the character of Colwell in reference to being a man of hasty and reckless action; what was his general conduct in that respect?"

*A.* "Colwell was a very hasty man and a very passionate man at all times; it took but little to excite him."

The witness who gave this testimony was Joseph H. Sawyer, who had been a switchman, a brakeman and helper at this yard, and who testified to a previous occasion when Colwell took the risk of running a switch train on the main track when a train was due, but no accident then happened, nor was the fact reported. This witness was afterwards asked:

*Q.* "Now, I will ask you if, in the course of time that you were there with Colwell, there were other occasions upon which you refused to have your switch engine go out upon the main track after the time the train was due?"

*A.* "Yes, I had refused him, I should think, two or three times, when we went out and escaped the Pacific."

*Q.* "Do you know whether if you had obeyed his orders and gone out, any accident would have happened?"

*A.* "That would owe to the condition of the track; it would owe to whether he had any cars to his engine or not; I did refuse one night; I know if I had gone out with my cars I do not doubt but what we would have gotten into trouble."

It seems very difficult to me to say that the first question and answer in any way tend to show Colwell's unfitness for the position.  He may have been a most prudent and careful man, and his passion and excitement aroused from seeing others' acts of rashness and his desire to promptly prevent accidents resulting therefrom.  The answer to the second question and the facts called for therein, relate but to the fact that Colwell had desired to send a switch engine on the main track after the time a train was due.  I do not understand from anything in the record in this case, that the fact of a coming train being past due, in and of itself would conclusively prevent any such use of the main track. The evidence shows that all trains were run by telegraph, and the time they passed each station reported, so that the position of the coming train and the time of its arrival could be known by the yard-master, and that the rules of the company prevented any use of the main track for a certain length of time before its expected arrival.

A train may be past due according to the schedule time as understood by the switchman, and yet it may be well known to the yard-master and officers of the company that by reason of accident or otherwise, it cannot arrive for perhaps hours, and surely in such a case, the mere fact of past due, should not prevent a use of the track.  That fact alone does not necessarily imply negligence.

The answer to the third question was mere matter of opinion, in a certain sense purely speculative, and from the very nature of all such evidence it could only be known, if not reported, by the immediate actors therein.  It was not a matter that could have been known generally, as would the fact of an accident; it would not call for or lead to any inquiry, and was known but to these two persons, so that no matter how active and diligent the officers of the railroad company may have been, unless they inquired of Mr. Saw-

yer they would have heard nothing even to put them upon inquiry. I am very clearly of opinion that such evidence was not admissible unless brought home to the knowledge of the officers of the road.

Objection was taken to certain questions asked concerning Colwell's habits of intemperance which it was claimed was unknown to officers of the company. There is evidence tending to show that the officers of the company did have their attention called to the fact that Colwell had at times used beer if not stronger drink. The evidence may not be very strong but the weight and importance to be given it were questions proper for the consideration of the jury. Having had their attention called to the fact, in view of the great danger likely to result should one in Colwell's position be likely to indulge in the use of intoxicating liquors, it became their duty to make careful and frequent investigation upon the subject. In my opinion there was sufficient evidence to be submitted to the jury upon this question as the information given was certainly sufficient to put the company upon its guard.

Except as to the specific acts of incompetency as already noticed, I am of opinion that there was upon all the other questions sufficient evidence to be submitted to the jury, within the rule laid down in *Conely v. McDonald* 40 Mich. 150, and as a new trial must be ordered, I consider it more prudent not to enter upon any extended discussion of the evidence in support of this view.

A question was also raised in reference to remarks made by counsel upon the final argument of the case. I doubt whether the question was properly raised, or even if raised whether it comes within the rule laid down in *Scripps v. Reilly* 35 Mich. 371, but as the question is not likely to be of much importance upon a new trial, no definite opinion need be expressed.

For the errors already pointed out I am of opinion the judgment should be reversed with costs and a new trial ordered.

The other Justices concurred.