# First National Bank of Montgomery *v.* Chandler.

*Action for Damages for Personal Injury.*

[Decided June 30, 1905, * 39 So. Rep. 822.]

1. *Master and Servant; Injuries to Servant; Incompetent Servants; Selection.*—In an action for injuries to a servant by the negli-

[First National Bank of Montgomery v. Chandler.]

gence of an alleged incompetent fellow servant, plaintiff is bound to prove, not only the servant's incompetency, but that it was actually known to the master, or could have been discovered by the exercise of reasonable care.

2. *Same; Evidence.*—The incompetency of a fellow servant, by which plaintiff was injured, may be shown by proof of specific acts of incompetency brought to the knowledge of the master, or by showing them to have been of such a nature, character, and frequency that the master in the exercise of due care must have known thereof.

3. *Same.*—Specific acts of incompetency of a fellow servant cannot be shown to prove that the servant was negligent in doing or omitting the act complained of.

4. *Same; Proximate Cause.*—Incompetency of plaintiff's fellow servant is insufficient to charge the master with liability for plaintiff's injuries, unless such incompetency was the proximate cause thereof.

5. *Same; Habitual Negligence.*—Negligence of a servant, sufficient to render the master negligent in retaining him in his employ, must be habitual, rather than occasional.

6 *Same; Assumed Risk.*—Where a servant has equal knowledge with the master with reference to the incompetency of a fellow servant, and notwithstanding such negligence continues in his employment without objection, he thereby waives the negligence in retaining such incompetent servant in his employ.

7 *Same; Employer's Liability Act; Complaint.*—Where a complaint for injuries to a servant by the negligence of an alleged incompetent fellow servant averred a common-law liability, resulting from the master's negligence in retaining such incompetent servant in his employ with knowledge of his incompetency, the complaint was not demurrable for failure to allege that the fellow servant had any superintendence entrusted to him, or any of the essentials to a recovery under the employer's liability act (Code 1896, § 1749.)

8. *Same.*—In an action for injuries to a servant by the alleged incompetency of a fellow servant, it was not necessary that the complaint in charging negligence should state the quo modo or negative the fact that plaintiff knew of the incompetency of such servant before going into the place of danger, where he was injured.

9. *Same; Negligence of Master.*—Where a complaint for injuries to a servant charged defendant with negligence at common law, in failing to inform itself of the untfitness of plaintiff's fellow servant, it was not necessary that the complaint should lay such failure to some person intrusted by defendant with management and superintendence.

[First National Bank of Montgomery v. Chandler.]

10. *Same; Contributory Negligence of Servant.*—In an action for injuries to a servant by the negligence of a fellow servant in the operation of an elevator while plaintiff was at work in the shaft, a plea alleging that plaintiff stated that he would be through in a few minutes, and it was nearly an hour after that the accident happened, was fatally defective for failure to aver that plaintiff's statement was made to the elevator operator or to any one else authorized to act thereon.

11. *Same.*—Where plaintiff, before going into an elevator shaft to make repairs, informed the elevator operator not to descend below the first floor, the fact that plaintiff thereafter told the operator he might descend once to the basement for a particular purpose did not authorize him to continue to operate the elevator to the basement.

12. *Same; Incompetent Servant; Disobedience of Orders.*—The fact that a servant claimed to be incompetent and disobeyed his master's instructions was competent on the issue of the servant's incompetency.

13. *Appeal; Pleading; Harmless Error.*—It is harmless error to sustain a demurrer to certain pleas where defendant had the benefit of all the matters set up therein under pleas remaining in the record.

14. *Master and Servant Injuries to Servant; Pleading.*—In an action for injuries to a servant by the alleged incompetency of a fellow servant, pleas averring that plaintiff had knowledge concerning such fellow servant's ability to operate the elevator, by which plaitiff was injured, was insufficient for failure to charge plaintiff with knowledge of the incompetency of the operator, due to carelessness and inattention.

15. *Evidence; Information; Experts.*—A question as to whether an alleged incompetent servant was a wideawake, attentive boy during the time he was engaged in his duties was not objectionable as calling for the opinion of a witness who was not an expert.

16. *Master and Servant; Injuries to Servant; Fellow Servants; Incompetency; Evidence.*—Where a witness, who had charge of a building, had been instructed by defendant's president to look after the operation of an elevator and take charge of the boy operating it, it became witness' duty to report the elevator boy's misconduct to his superior; and hence evidence that witness had been informed of the conduct of the boy was admissible in an action for injuries by the boy's negligence.

17. *Same; Instructions.*—Where, in an action for injuries to a servant, there was evidence that the slipping of an elevator brake, alleged to have caused the injury, was caused by the

[First National Bank of Montgomery v. Chandler.]

inattention or carelessness of the elevator boy, an instruction that if the injury was caused by the slipping of the brake plaintiff could not recover was properly refused.

18. *Same.*—Where an elevator boy had been informed of plaintiff's intention to work in the elevator shaft, and had been directed not to permit the elevator to descend below the first floor, but he did so, causing the plaintiff's injuries, an instruction that if another had been instructed by a superior to take a carpet on the elevator to the basement, which he did, then plaintiff's injury was not caused by the incompetency of the elevator boy, was properly refused.

19. *Same.*—Where plaintiff was injured by the operation of an elevator below the first floor and against plaintiff while he was in the shaft in the basement, a request to charge hypothesized on the running of the elevator to the first floor was properly refused.

20. *Same.*—An instruction that if plaintiff's injury was caused either by his own negligence in failing to take precaution for his own safety, or by the negligence of a superior servant in directing another servant to take a carpet to the basement on the elevator, or by his fault in telling the elevator operator to take him to the basement, or if the injury occurred in any other way than by the negligence of the elevator operator, plaintiff could not recover, was properly refused.

21. *Trial; Verdict; Conformity to Complaint.*—Where there were counts in the complaint that claimed more than the amount of the verdict, the verdict was not excessive because it was for a sum in excess of that claimed in two of the counts.

22. *Damages; Excessiveness; Personal Injuries.*—Where plaintiff suffered great mental anguish and physical pain from his injuries sustained, which were permanent in character and such as would incapacitate him from performing manual labor in the line of his business, a verdict for $3,500 was not excessive.

*Rehearing denied January 6, 1906.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

The appellee was employed by the appellant to do some work in the elevator shaft between the first floor and the basement of the bank building, and, after notifying the elevator boy that he had gone to work and not to bring the elevator down to the first floor any more until so notified, he began his task, and while working at it the

elevator was brought down by the elevator boy and appellee was struck by the elevator, crushed, bruised, and otherwise injured. The complaint contained 13 counts, of which counts 2 and 10 were stricken on the plaintiff's motion.

The first count was in words and figures as follows: "The plaintiff claims of the defendant, a corporation under the banking laws of the United States the sum of $15,000 damages, for this: That on the 22d day of January, 1903, the defendant was in the possession and control of a certain building, to wit, a six-story building on Commerce street, on the first floor of which it conducted its business of banking, and on the other floors of which were rooms it rented for offices and other purposes. That there had been constructed in said building, and defendant was operating on said 22d day of January, 1903, a certain car, called an 'elevator,' which ascended and descended vertically in what was and is known as an 'elevator shaft,' and conveyed said tenants and other persons up and down from floor to floor in said building. That said elevator was at the date aforesaid in charge of and operated by one Archibald Lewis, who was employed by defendant for said purpose, and whose duty it was by means of appliances in said car to apply and disconnect the motive power as occasion required and as he might desire the same to ascend or descend. That on the date aforesaid plaintiff was employed by defendant to perform certain mechanical labor in the shaft or well of said elevator below the ground floor of said building, and pursuant to said employment plaintiff on said date was engaged in performing said labor in said shaft or well at the place aforesaid. That while he was so engaged in said work at said time said Lewis was then and there in charge of and operating said elevator as aforesaid, and negligently caused the same to descend into said shaft to the place where plaintiff was so at work, upon plaintiff, whereby his body, to wit, shoulders and chest, were crushed, bruised, and injured. Plaintiff avers that said Lewis, who was so in charge of said elevator at said time and place as aforesaid, was incompetent to operate the same, by reason of carelessness and inattention to his said duties, and that plaintiff's said

injuries were caused by said incompetence; and plaintiff avers that at and before the time when plaintiff was so injured said defendant was informed of said incompetency of said Lewis, and that with such information it negligently retained and employed said Lewis in such position. Plaintiff avers that he has suffered great mental anguish and physical pain because of said injury, and has suffered special damages, in that said injuries are of a permanent character, and now prevent, and will in future incapacitate, plaintiff from engaging in manua labor in the line of his business as a joiner and cabinet maker, for a livelihood, wherefore he brings this suit."

The third count was: "Plaintiff claims of the defendant the sum of $15,000 as damages, and adopts as a part of this count, and reaffirms and again alleges, all the averments of the first count down to the averment of incompetency of said employe, Archibald Lewis. And in place of said last mentioned averment, and all that follows it in said cout, plaintiff alleges that said Archibald Lewis, who was so employed by defendant to operate said elevator car, was at the time aforesaid incompetent to safely operate the same by reason of his carelessness and inattention to his duties in that respect; and that his incompetency was known to defendant at and before the time of plaintiff's said injury; and plaintiff avers that, notwithstanding defendant so knew of the incompetency of said Lewis, it retained him in its employment to operate said elevator. Plaintiff further avers that it was because of said incompetency that said Lewis negligently caused said elevator to descend in said shaft, to the injury of plaintiff as aforesaid."

The fourth count was withdrawn.

The fifth count was the same as the first count down to and including the words "was engaged in performing said labor in said shaft or well at the place aforesaid," and adds: "That while he was so engaged in said work at said time and place said elevator car descended down said shaft upon plaintiff. whereby he was greatly injured. Plaintiff avers that the descent of said elevator car upon him as aforesaid was caused by the negligence of said Lewis, who was in the service or employment of the defendant, and who had at said time superintendence of

said car and the motive power by which the same was operated as aforesaid, and was so caused while said Lewis was in the exercise of such superintendence."

The sixth count was the same as the first count down to and including the words, "his shoulders and chest were crushed, bruised and injured," and adds: "Plaintiff avers that said injury was caused by reason of the negligence of A. M. Baldwin, who was in the service or employment of the defendant, and who had superintendence of the person operating said elevator intrusted to him whilst in the exercise of such superintendence."

The seventh count was the same as the first count down to and including the words "that on the date aforesaid plaintiff was employed by," and adds in the place of the word "defendant" the words "A. M. Baldwin, who was president of the defendant corporation," and then continues as in the first count to the end of same.

The eighth count was the same as the first count down to and including the words "his shoulders and chest were crushed, bruised and injured" and adds the words: "Plaintiff avers that said injury was caused by the negligence of A. M. Baldwin, who was then in the employment of the defendant, and to whose orders or directions the plaintiff at the time of his injury was bound to conform and did conform, and that said injury to plaintiff resulted from his having so conformed. And plaintiff avers, as a part of each count of the foregoing complaint, numbered 2, 3, 5, 6, and 8, that he has because of said injury suffered great mental anguish and physical pain, and has sustained special damages in this: That said injuries are permanent, and now prevent and will in future incapacitate plaintiff from engaging in manual labor in the line of his vocation, to wit, mechanical labor as a joiner and cabinet maker, or other profitable employment."

The ninth count was the same as the first count down to and including the words "his shoulders and chest were crushed, bruised, and injured," and adds the words: "And plaintiff avers that said Archibald Lewis, who was so in charge of said elevator at said time and place, was incompetent safely to operate the same by reason of his carelessness and inattention to his said duties, and that

plaintiff's said injuries were caused by said incompetence. Plaintiff avers that the defendant could, by the exercise of reasonable diligence at and before the time said injury occurred, and in time to have averted the same, have informed itself of the unfitness of said Lewis, by reason of his carelessness and inattention to his said duties, to be intrusted with the performance of the thing. But plaintiff avers that the defendant negligently failed to inform itself of said incompetency of its said employe, and retained said Lewis in its employment, to the injury of the plaintiff as aforesaid."

The eleventh count: "Plaintiff claims of the defendant the further sum of $15,000 as damages for this: That defendant on the 22d day of January, 1903, was the owner of a certain building on Commerce street in the city of Montgomery, Ala., known as the 'First National Bank Building,' which was several stories high, and was causing to be operated a passenger elevator to carry persons from one floor to another, and prior to said date one Archibald Lewis was and had been in charge of and operating said elevator. That said Lewis was incompetent to operate or have charge of the same, because of his carelessness and inattention to his duty. That on the 22nd day of January, 1903, plaintiff was employed by the defendant to perform certain work in the shaft in which said elevator was worked and operated. That while plaintiff was so employed said Lewis negligently caused or permitted said elevator to descend into said shaft to the place where plaintiff was working under his said employment, and upon plaintiff, whereby his body was greatly crushed, bruised, and otherwise injured. Plaintiff avers that said Lewis was so careless and inattentive in the matter of the discharge of his said duties that he was an incompetent and unfit person to leave in charge of the same while plaintiff was so at work in the shaft of said elevator, and that by the use of reasonable diligence the defendant could, in time to have averted said injury, have ascertained the fact of such incompetence; but plaintiff avers that said defendant negligently failed to discover the fact of such incompetency, and left said Lewis in charge of said elevator while plaintiff was so at work as aforesaid, whereby plaintiff was

injured as aforesaid. And plaintiff avers as parts of each of the foregoing counts numbered, respectively, 9 and 11, that he has, because of said injury, suffered great mental anguish and physical pain, and has sustained special damage in that said injury is of a permanent character, and now prevents and will in future incapacitate plaintiff from engaging in manuel labor in his vocation as a joiner, cabinet maker, and carpenter, or other profitable employment."

Twelfth count: "Plaintiff claims of the defendant the further sum of $15,000 as damages, for this: That on the 22d day of January, 1903, defendant was maintaining and operating an elevator for the carriage of passengers in its building on Commerce street, in the city of Montgomery, Ala., known as the First National Bank Building, which said elevator was then and there in charge of and operated by one Archibald Lewis, who was employed for that purpose by the defendant. That on 22d day of January, 1903, while plaintiff was in the shaft of said elevator, where, under employment of the defendant, he was engaged in certain work in said elevator shaft said Lewis negligently caused or permitted said elevator to descend in said shaft upon the body of plaintiff, whereby plaintiff was greatly injured. Plaintiff avers that said Archibald Lewis was at said time incompetent to discharge his said duties with which he was instructed, and that plaintiff's said injuries resulted from such incompetence. That said defendant then knew, or with the exercise of reasonable diligence could have known, of the incompetency of said Lewis."

The thirteenth count was the same as the twelfth count down to and including the words, "Plaintiff's said injuries resulted from such incompetence," and adds: "Plaintiff avers that said Archibald Lewis was, by reason of his inexperience and youthfulness, incompetent to have the charge of and to operate said elevator at the time he was employed so to do by defendant, and that said defendant negligently employed said Lewis to perform said duties without exercising reasonable care to ascertain his fitness and competency to discharge the same; and plaintiff avers, as parts of the separate counts numbered 12 and 13, that said injury to plaintiff by reason of the de-

scent of said elevator upon him consisted of bruising, crushing, straining, and injuring his body, including his neck, shoulders, and chest, with resulting inflammation and stiffness of his neck, whereby plaintiff has suffered great physical pain and mental anguish, and has sustained permanent injury, in this: that he is now and will be in the future incapacitated from engaging in manual labor of his vocation of carpenter, joiner, and cabinet maker, or other manual labor whereby plaintiff can gain a livelihood. That as a result of said injury plaintiff has incurred a liability of $250 as reasonable fees for medical and surgical attention, medicines, etc.; and plaintiff has thereby been prevented from pursuing his usual means of livelihood, and thereby deprived of the earnings which would accrued therefrom, to wit, $2,000, for all of which plaintiff sues."

The defendant assigned many grounds of demurrer to the several counts of the complaint. To count 1 it filed the following: "(1) It counts on injury to the plaintiff by the negligence of a fellow servant, and it is not alleged that the fellow servant whose negligence caused the injury had any superintendence intrusted to him, and that said negligence occurred while the servant was in the exercise of said superintendence. (2) It counts on injury by the negligence of the fellow servant, and it is not alleged that the plaintiff was bound to conform or did conform to the orders or directions of the fellow servant at the time of injury, nor is it alleged that the injury resulted from plaintiff's having conformed to the orders or directions of a fellow servant. (3) It counts on injury by the negligence of a fellow servant, and does not allege that the injury was caused by reason of the act or omission of a fellow servant done or made in obedience to the rules or regulations or by-laws of the master. (4) It is not alleged that the injury was caused by reason of the act or omission of a fellow servant done or made in obedience to a particular instruction given by any person delegated with the authority of the master in that behalf. (4 1-2) No liability. (5) It is not alleged that the elevator car was upon any railroad or upon any part of the track of a railroad. (6) It is not alleged that said elevator was operated below the ground floor of said

building to where plaintiff was at work, but only up and down the six stories of the building. (7) It is not alleged that defendant had employed or instructed said Lewis to operate said elevator below the ground floor of said building, where plaintiff was at work, or that it knew that said Lewis was so operating it. (8) It is not alleged that plaintiff informed the defendant that Lewis was incompetent to operate said elevator by reason of the matters alleged prior to his injury, nor is it alleged that plaintiff knew that defendant had such information prior to the injury. (9) It is not alleged that Lewis was in charge of or operating the elevator when the injury occurred. (10) It is not alleged that the injury was caused by defendant's employing and keeping in his employment said Lewis, who was incompetent, although it is alleged that the injury resulted because of the incompetency of said Lewis. (11) It does not appear whether the cause of action is based upon the negligence of Lewis, the incompetency of Lewis, or the negligence of the defendant in keeping Lewis in its employment. (12) It is not alleged that plaintiff, before going into the shaft, did not know that Lewis was incompetent. (13) It is alleged that the defendant knew of Lewis' incompetency long enough before the action to act on said knowledge." (14) A combination of grounds 1, 2, 3, 4, 5, above assigned. "(15) It is not alleged that said injury was caused by the negligence of any one in the employ of defendant, charged with the duties, doing or not doing the acts, or anything with failure to do or not to do which is charged as a cause of the injury. (16) Because it is not alleged that any person in the employ of the master, who was intrusted by the master with the superintendence of said elevator or its operation, knew or had information of the incompetency of said Lewis and neglected to discharge him, although it is alleged that the defendant had knowledge that Lewis was incompetent and with such knowledge employed or retained him." (17) Same as the sixteenth, except that "it is not alleged that Lewis was retained in the employment of the defendant by the act or omission of any person in the service of the master done or made in obedience to particular instructions of any person delegated with au-

thority of the master in that behalf." (18) Same as the seventeenth. "(19) It is alleged that said injury was caused by the negligence of the defendant, and not by the negligence of any named servant of the defendant. (20) It is alleged that defendant knew that the plaintiff was in the shaft, but it is not alleged that this was known to any particular person in the employ of the master who had any superintendence intrusted to him, and that said injury was done by the negligence of such servant." (21, 22, and 22 1-2) In effect the same as (20), with slight change of veriage. "(23) It is not alleged that Lewis knew that plaintiff was at work in the elevator shaft at the time Lewis caused said elevator to descend into said shaft upon plaintiff. (24) It is not alleged that Lewis was incompetent by reason of carelessness and inattention to duty, and that said injury was caused by his incompetency, which is but another form of charging negligence on the part of Lewis for which defendant is not shown to be liable. (25) Carelessness and inattention is negligence, and not incompetency, and said count does not show defendant liable for the negligence of Lewis. (25 1-2) Said count does not show that the defendant knew of Lewis' incompetency or had information thereof. (26) It is not shown that the injury alleged was the proximate result of the negligence complained of. (26a) For aught that appears the plaintiff had no right to be in said elevator shaft. (26b) For aught that appears plaintiff was trespassing in said elevator shaft. (26c) There was no allegation that plaintiff was in the employ of defendant."

Demurrers 26a, 26b, and 26c were interposed to the second count, and as they are reassigned to other counts we set them out. The same grounds were assigned to the third count as to first and second. To the fourth count the same grounds were interposed as to the first and second, but this count was withdrawn. Same grounds were interposed to the fifth count and to the sixth count as to the first count, with additional grounds to sixth count as follows: "(1) It is not alleged that Lewis negligently caused or allowed the elevator to descend upon the plaintiff. * * * (3) It does not appear how the negligence of Baldwin caused the injury, and (4) the said count is in-

consistent and contradictory, in that it alleges that Lewis, in operating the elevator car, caused it to descend upon plaintiff, and that the injury was caused by the negligence of Baldwin. (5) It does not appear that Baldwin knew the plaintiff was in the elevator shaft. (6) It does not appear whether the negligence of Baldwin consisted in employing or retaining Lewis, or in failing to instruct Lewis as to plaintiff's position, or some instruction given to Lewis, or his failure to give instruction to Lewis, or in his failure to have said elevator in repair, or really in what the negligence consisted." Demurrers containing practically the same grounds were interposed to the other counts of the complaint, and there were demurrers to the whole complaint, alleging a joinder of counts seeking to recover upon the common law liabilitly of the defendant with counts seeking to recover upon the statutory liability of the defendant stated in several ways.

The defendant interposed a number of pleas to the several counts of the complaint, but these need not be set out, as the substance of the ones under consideration is sufficiently set forth in the opinion. The fourth ground of the demurrer interposed to the fourth plea, and reassigned as to the tenth plea, is as follows: "It is not alleged in said plea that plaintiff knew of the incompetency of the elevator boy." The pleas referred to were an attempt to set up contributory negligence and assumption of risks in going into the elevator shaft, without alleging that at the time plaintiff went into the shaft to work he knew of the incompetency of the elevator boy.

Murphy, introduced as a witness by the defendant, testified in response to questions by plaintiff's attorney as follows: "It is a fact that tenants complained to me that Archie read on the elevator, and that he was sleepy and drowsy when standing. Mr. Ball complained to me once or twice. I think this was after the injuries of Mr. Chandler; maybe before. The tenants said he was sleeping several times and reading books." The defendant asked to exclude this testimony, and the court declined to do so.

Charges 1 to 6 were the affirmative charges with hypothesis as to the several counts of the complaint. Charge 7: "If the jury believe from the evidence in this case that the injury to the plaintiff was caused by the brake slipping, then the plaintiff cannot recover." Charge 8: "If the jury believe from the evidence in this case that Lewis received instructions not to run the elevator below the second floor of the building and was obeying said instructions the plaintiff told Lewis that the elevator could be brought down and that it would not interfere with the plaintiff (or words to that effect), and further believe that Lewis, after he told him as above (if the jury believe that plaintiff told Lewis as above), continued to operate said elevator below the second floor until plaintiff was injured, then the plaintiff cannot recover." Charge 9: "If the jury believe from the evidence that the injury to the plaintiff was caused either by his own neglect in failing to take precautions for his safety, or if the jury believe that the injury to the plaintiff was caused by the neglect of Murphy in telling Bryant to take the carpet to the basement on the elevator, or by the fault of Bryant in telling the said Lewis (if he did tell him) that Murphy said for Lewis to take him to the basement, or if the jury believe said injury was caused in any other way than by the neglect of Lewis, the plaintiff cannot recover, and the verdict must be for the defendant." Charge 10: "If the jury believe from the evidence that the said Lewis was instructed not to operate the elevator below the floor, and that Lewis obeyed said instsructions until Mr. Pelzer came, and if the jury believe from the evidence that when Pelzer came plaintiff told the elevator boy that the elevator could be brought down without interfering with him (plaintiff), and if they further believe that thereafter said Lewis continued to operate said elevator down to the first floor until the plaintiff was injured, and the plaintiff said nothing further to Lewis as to how far down to operate the elevator, the plaintiff is not entitled to a verdict." Charge 11: "If the jury believe from the evidence that Joe Bryant was told by Belton Murphy to take a rug or carpet on the elevator to the basement, and that Joe Bryant went to the elevator and

told the elevator boy, Lewis, that Belton Murphy said for him (Lewis) to take him (Bryant) to the basement, and in pursuance of what Bryant said Lewis ran the elevator down to the basement, then the injury to the plaintiff was not caused by the incompetency of Lewis, and the plaintiff cannot recover."

The evidence tended to show that the plaintiff was employed by the defendant bank to do some work in its elevator shaft between the basement floor and the first floor of the building, and he notified the elevator boy that he was going down to work and not to bring the elevator down any more; that Mr. Pelzer came in the building and desired to use the elevator, and plaintiff told the elevator boy, Lewis, that he could bring the elevator down that time, but not to do so any more until plaintiff gave him notice that he was through. Plaintiff was at work on a stepladder when the elevator came down and crushed him. There was evidence pro and con as to the incompetency of the elevator boy and as to the knowledge of this incompetency of the elevator boy on the part of the employer, the defendant bank. The jury rendered the verdict for plaintiff, assessing his damages at $3,500. After verdict, but before judgment was rendered thereon, the following motion was made by the defendant: "The defendant objects to the rendition of the judgment upon the verdict rendered for the reason that counts 1, 3, and 9 claim damages to the amount of $15,000, and counts 12 and 13 claim damages to the amount of $2,000, and the verdict is a general verdict for $3,500, without stating upon which count or counts it is based, and because $2,000 is claimed in counts 12 and 13, and the verdict is for $3,500, without stating upon which count it is founded." This motion was overruled by the court and the defendant excepted. Charges 7 to 11 inclusive, and 1 to 6, inclusive, were refused to the defendant.

THOMAS H. WATTS, for appellant.—The demurrers to the first count should have been sustained.

Each of the grounds of demurrer were based upon the proposition that the count charged the injury to plaintiff was caused by the negligence of Lewis and upon the

further proposition that unless the plaintiff being a servant and having been injured by a fellow servant shows by his complaint one of the grounds of recovery allowed by the statute, the complaint is insufficient.—Section 1749, Code of 1896; *Seabord Mfg. Co. v. Woodson,* 94 Ala. 143; *U. S. Rolling Stock Co. v. Weir,* 96 Ala. 396; *K. C. M. & B. R. R. Co. v. Burton,* 97 Ala. 240; *Central of Ga. Railway v. Lamb,* 124 Ala. 172.

If negligence, carelessness, inattention to duty, can, by being called "incompetency" enable the plaintiff to recover of what use is the statute? See also *Conrad v. Grey,* 109 Ala., on p. 135; *Couch v. Coal Co.,* 46 Iowa 17; *Baltimore, &c. v. Neal,* 65 Md. 431; *Harvey v. R. R. Co.,* 88 N. Y. 481.

Other grounds of demurrer (numberes 22 1-2 and 23) to said count were that neither the defendant nor the said Lewis is alleged to have known plaintiff was in said elevator shaft.—*Broslin v. K. C. M. & B. R. R. Co.,* 114 Ala. 299.

Demurrers should have been sustained to the ninth count.—*Seaboard v. Woodson,* 98 Ala. 378; *Broslin v. K. C. M. & B. R. R. Co.,* 114 Ala. 398.

Demurrers were sustained to defendant's pleas 6, 7, 8, 9, 10, 11, 13, 14. These demurrers were wrongfully sustained.—*A. G. S. R. R. Co. v. Roach,* 110 Ala. 266; *St. Ry. Co. v. Colderwood,* 89 Ala. 247; *Brown v. Scarboro,* 97 Ala. 316; *Gov. St. R. R. Co. v. Hanlon,* 53 Ala. 70; *Tanner v. L. & N. R. R. Co.,* 60 Ala. 631.

By proper care on his part, the plaintiff could have prevented his injury and hence cannot recover.—*Lilley v. Fletcher,* 81 Ala. 234.

The plaintiff took, by his statement that the elevator could be brought down, an unnecessary risk.—*Crawford v. L. & N. R. R. Co.,* 89 Ala. 240; *Walden v. L. & N. R. R. Co.,* 94 Ala. 277; *E. T., V. & G R. R. Co. v. Kornegay,* 92 Ala. 228; *George v. M. & O. R. R. Co.,* 109 Ala. 245; *Orr v. L. & N. R. R. Co.,* 91 Ala. 548.

When the plaintiff told the elevator boy that the elevator could descend without interefering with him (plaintiff) the plaintiff assumed the risk of the elevator's being brought down into the shaft.—*A. G. S. R. R.*

*Co. v. Roach,* 110 Ala. 266; *A. G. S. R. R. Co. v. Roach,* 116 Ala. 300.

Here the risk of having the elevator brought down was assumed voluntarily by the plaintiff without the knowledge of defendant, and the plea was a good defense.—4 Mayfield, p. 310, Secs. 258 g, 258 h; *Allen v. Birmingham Ry. & E. Co.,* 99 Ala. 359.

No tenable grounds of demurrer was urged to plea 11, hence it was error to sustain them.—*Laughran v. Brewer,* 113 Ala. 518.

If with this knowledge, the plaintiff went to work in said elevator shaft while Lewis was operating the elevator, the plaintiff assumed the risk of any danger which might result to him from the incompetent operation of said elevator by said Lewis.—*Worthington v. Goforth,* 124 Ala. 656; *Bessemer L. & I. Co. v. Dubose,* 125 Ala. 443; 4 Mayfield, page 136, Secs. 217 and 223.

The objections to the questions to the witnesses, Hastings and Cody, and the motion to exclude their answers, were proper and should have been sustained.—*Sledge v. Scott,* 56 Ala. 202; *Tanner v. L. & N. R. R. Co.,* 60 Ala. 621; *Hames v. Brownlee,* 63 Ala. 277; *Minniece v. Jeter,* 65 Ala. 222; *Loeb v. Flash,* 65 Ala. 526.

Charges 1, 3, 4, 5, and 6, refused to defendant should have been given.—*Conrad v. Gray,* 109 Ala. 130; *Birmingham R. R. Co. v. Allen,* 99 Ala. 359; *Eureka Co. v. Bass,* 81 Ala. 201; *L. & N. R. R. Co. v. Stutts,* 105 Ala. 368; *A. G. S. R. R. Co. v. Davis,* 119 Ala., p. 583.

Another reason why these charges should have been given is that each and all of the counts, remaining in the complaint, were based upon the alleged incompetency of Lewis and the injury of plaintiff was attributed to the incompetency of Lewis and the negligence of the defendant in employing him or retaining him in its employ. The evidence, without dispute, shows that at the time the plaintiff was injured, the brake of the elevator slipped and by reason of that fact the plaintiff was injured. That being true, the plaintiff was not injured by the means or from the cause alleged and the verdict therefore should have been for the defendant.—*A. G. S. R. R. Co. v. Hall,* 105 Ala. 599; *A. G. S. R. R. Co. v. Davis,* 119 Ala. 572.

[First National Bank of Montgomery v. Chandler.]

It was error to refuse charge 7.

There must not be a material variance between the allegation and the proof.—*Warden v. L. & N. R. R. Co.,* 94 Ala. 277; *McDaniel v. Highland A. & B. R. R. Co.,* 90 Ala. 64; *Collier v. Coggins,* 103 Ala. 281; *A. G. S. R. R. Co. v. Hall,* 105 Ala. 607; *A. G. S. R. R. Co. v. Davis,* 119 Ala. 583.

For the same reason, and on the same authorities, charge 9 should have been given.

The 8th and 10th charges should have been given. *Birmingham Ry. Co. v. Allen,* 99 Ala. 259; *Eureka Co. v. Bass,* 81 Ala. 201; *L. & N. R. R. Co. v. Stutts,* 105 Ala. 368; *A. G. S. R. R. Co. v. Davis,* 119 Ala. 583.

RUSHTON & COLEMAN, for appellant on re-hearing. The court's attention is called to two grounds for granting an application for rehearing; the criticism indulged in as to charge 9 requested by the defendant, and the refusal of the lower court to give this charge, and the criticism of charge 7 by this court, and the refusal of the lower court to give said charge. (The insistence of counsel is that these charges each assert correct propositions of law under the evidence in this case, and the pleadings, but no authorities are cited in support thereof.)

J. M. CHILTON and FRED S. BALL, for appellee.—The demurrers to the complaint were properly overruled. If there is one principle that is beyond the pale of controversy in this state, it is, that in charging negligence, the *quo modo* need not be stated.—*Chambliss Case,,* 97 Ala. 171; *Ensley Co. v. Chewning,* 93 Ala. 24; *Davis' Case,* 92 Ala. 300; *Watson's Case,* 90 Ala. 41; *Lazarus' Case,* 88 Ala. 453.

It was unnecessary to aver ignorance on part of the plaintiff of the incompetency of the servant, that is a matter of defense invoking the doctrine "Volenti non fit injuria."—*Hanlan's Case,* 53 Ala. 70; *Clark's Case,* 74 Ala. 443; *Davis' Case,* 92 Ala. 300; *Brundley's Case,* 95 Ala. 397; *Northern Pacific v. Mares.* It is ony were the injured servant knows of the incompetency of the offending servant, as well as the master or had equal

means of knowing, and with such knowledge continues within the employ without objection that he waives the negligence of the master in this respect.—Bailey's Injury to Servant, p. 67; *Laning v. R. R. Co.*, 49 N. Y. 525; *Wright v. R. R. Co.*, 25 N. Y. 566; *Barber's Case*, 5 Ohio St. 563.

In respect of the common law duty of the master, it has been held in this State that "Ordinary care is not sufficient; It must be due and reasonable care, proportionate to the hazard of the work to be performed."—4 Mayfield's Dig. p. 144; *Smoot v. M. & O. R. R. Co.*, 67 Ala. 13; *Probst case*, 83 Ala. 518. The greater the danger, the greater the care is the rule.—Bailey's Injury to Servants, pp. 54-55; *Filts v. Ry. Co.*, 55 Mich. 440; *Probt case, supra*. This duty is not confined to care in the original selection. The master must exercise proper supervision. It was therefore proper to show that the company did know or ought to have known when the servant is unfit for the position.—Dresser's Employer Liability Act, p. 202-3; *Bolling v. Walker*, 22 Ala. 294; *Buchalew case*, 112 Ala. 146. Forgetfulness renders a servant incompetent, so does the indulgence in the excessive use of intoxicants. Inexperienced may be alleged as element of unfitness. So a hasty and excitable disposition violent and hasty temper.—115 Ind. 450; *P. & O. R .R. Co. v. Henthorne*, 73 Fed. 634; *Northern Pac. v. Mayers*, 123 U. S. 710, and note in book 31, p. 295 L. C. P. Ed; *Wabash v. McDaniels*, 107 U. S. 454 and annotation in book 27, pp. 605-6; L. C. P. Ed.; *Conrad v. Gray, supra; Ozlan v. N. P. L. Co.*, 106 Fed. 298.

The grounds of demurrer to the complaint while numerous, involved in the main the same contentions in respect to each count and we content ourselves with calling the court's attention to the authorities *supra*. It cannot be assumed that this suit was brought under the Employer's Liability Act.

In the 12th ground, it is said it is not alleged that the plaintiff did not know before going into the shaft that Lewis was incompetent.

This, under our decisions, is defensive matter. The plaintiff was not bound to negative his own want of knowledge.—Dresser, Employer's Liability Act, p. 390;

[First National Bank of Montgomery v. Chandler.]

*C. & W. Ry. Co. v. Bradford*, 86 Ala. 573; *Broslin's Case*, 114 Ala. 398.

It is scarcely necessary to notice the 19th ground, which asserts that the injury was caused by the negligence of the defendant, and not by the negligence of some named servant of the defendant.

The common law duty of using care in the selection of servants and in the oversight of their conduct, is a duty which rests upon the master,—so much so, that the master can not evade it or responsibility for its non-performance by delegating its discharge to a servant.—*Davis' Case*, 91 Ala. 487; *Tyson's Case*, 61 Ala. 554; *Bolling v. Walker*, 22 Ala. 294.

It is insisted that the 9th, 11th, 12th and 13th counts are defective in not alleging that the defendant knew of the incompetency of Lewis long enough before the accident to have averted the injury. There are several answers to this contention.

1st. It is a settled rule of pleading that every plea must answer the whole complaint or count to which it is addressed, and the same is true of a demurrer. If a demurrer professes, as it must, to answer the whole count and leaves any material part of the count unanswered, it is bad. "The rule of the common law, that if a plea in bar professes to answer the whole action, it cannot leave a material part of the complaint unanswered, or if it professes to answer for all of the defendants, it must in truth be an answer for all, prevails under the Code." *Bryan et al. v. Wilson*, 27 Ala. 208; *Whittick v. Traunm*, *Ib.* 562; *Gibson v. Marquis and Wife*, 29 Ala. 688; *Intendent, etc. of Livingston v. Pippin*, 31 Ala. 542; *Rogers, Admr. v. Brazeale*, 34 Ala. 512; *Newsom v. Huey*, 36 Ala. 37; *Adams v. McMillan, Exr.*, 7 Port. 75; *Tomkins et. al. v. Reynolds*, 17 Ala. 109; *Wilkinson v. Mosely*, 30 Ala. 562; *Standiver v. White*, 9 Ala. 527; *Mils & Co. v. Stewart*, 12 Ala. 90; *White v. Yarbrough*, 16 Ala. 109. *Flournoy v. Lyons*, 70 Ala. 308; *Hays v. Anderson*, 57 Ala. 374; *Echols v. Orr*, 106 Ala. 237; *L. & N. v. Morgan*, 114 Ala. 449; *Lackey's Case*, 114 Ala. 152; *Barksdale v. Davis*, 114 Ala. 623; *Howison v. Oakley*, 118 Ala. 215; *L. & N. v. Hines*, 121 Ala. 234; *Kennon & Bro. v. Wes-*

*tern Union*, 75 Ala. 168; *Treadwell v. Tills*, 108 Ala. 262.

2nd.   Another answer to this ground of demurrer is that it was not incumbent upon the plaintiff to do more than allege the incompetency of Lewis, that the injury resulted from the incompetency and that the defendant knew of such incompetency or with the use of reasonable diligence might have known it.   The fact, if it were a fact, that the defendant discovered the incompetency too late to act upon his knowledge of the fact, would obviously be defensive matter to be set up by the defendant. It involves an admission that the defendant did know of the incompetency and an averment by way of avoidance that it did not acquire the information in time to act upon it.—*City Council of Montg. v. M. Plant Road*, 31 Ala. 76, 85; *Bromley's case*, 95 Ala. 307, 304; *Davis' case*, 92 Ala. 300.

The same principle, of course, applies to demurrers.

There were four grounds of demurrers interposed to the complaint as a whole.   The objection raised was cured by the ruling of the court sustaining a demurrer to those counts setting up liability under the statute. The employer's act does not affect the common law duty of the master to employ competent fellow servants.—*Culver v. R. R. Co.*, 108 Ala. 330; Dresser, p. 267.   Besides, common law counts may be joined with counts under the statute.—Dresser, p. 646; *Buchalew v. T. C. I. Co.*, 112 Ala. 146.   There was no error committed by the court in sustaining demurrers to the defendants pleas.   The defendant had the full benefit of every defense urged in the pleas to which demurrers were sustained under other pleas to which demurrers were overruled; besides, the demurrers were properly sustained.—*Williams v. Jones*, 4 Am. Eq. Dec. 258, 263, 276, 281, and numerous cases there cited; *Bayliss case*, 74 Ala. 151; *Montgomery v. Wright*, 72 Ala. 411; *Wilson's case*, 85 Ala. 369; *Mouton v. L. & N. R. R. Co.*, 128 Ala. 546; *Bolling v. Walker*, 22 Ala. 294.   The court committed no error in its ruling on the testimony.—*S. & N. R. R. Co. v. McLendon*, 63 Ala. 266; *So. Ry. Co. v. Posey*, 124 Ala. 486.   The defendant was not entitled to the affirmative charge as to either count under the evidence.—*S. & N. R. R. Co. v. Sandlin*, 125 Ala. 585; *L. & N. v. Solomon*, 127 Ala. 129; *K. C. v. Henson*, 31 So. 590; *So. Ry. Co. v. Posten*, 31 So. 21.

ANDERSON, J.—The counts to which demurrers were overruled and upon which this case was tried in the court below are not based upon any statutory liability under the employers' liability act, but seek to recover damages under the common law for the negligence of the master in employing or retaining an incompetent servant to run and manipulate its elevator. The master must exercise due and reasonable care in the selection of his servants, with reference to their fitness and competency. "He must also exercise the same degree of care in the matter of the retention of his servants in his service, for his responsibility is the same whether the want of skill of a servant, or his incompetency from other causes, existed when he was hired, or has come up since, if he has been continued in the service with notice or knowledge, either actual or presumed, of such unfitness by the master. Liability on the part of an employer for an injury caused by the incompetency of a fellow servant depends upon its being established by affirmative proof that such incompetency was actually known by the master, or that, if he had exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. * * * The presumption is that the master has exercised proper care in the selection of the servant. It is incumbent on the party charging negligence in this respect to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master or company, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice. But such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of. So it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant, to leave it to the jury whether they did come to the knowledge if he had exercised ordinary care.. * * * It is understood, of course, that the incompetency of the servant in all cases, in order to charge the master, was the proximate cause of the injury. The mere fact that the servant was incompetent and the

master had knowledge thereof is of no importance, unless therein is found the cause of the injury, or a cause contributory thereto, without which it might have been avoided or not have happened."—Bailey on Master's Liability for Injuries to Servants, 47, 54, 70 ;*Laning v. R. R. Co. of New York,* 49 N. Y. 521, 10 Am. Rep. 417; *Chicago & G. E. R. R. v. Harney,* 28 Ind. 28, 92 Am. Dec. 282; *Michigan Central R. R. v. Gilbert,* 46 Mich. 179, 9 N. W. 243; *Kersey v. Kansas City R. R.,* 79 Mo. 362; *Hayes v. Western R. R.,* 3 Cush. 270; *Johnston v. Pittsburg W. R. R. Co.,* 114 Pa. 443, 7 Atl. 184.

It seems to be the rule at law that, in order for the plaintiff to recover against the defendant, he is bound to show by affirmative testimony:  (1) That the injury was the result of the act or omission of some fellow servant; (2) that said fellow servant was incompetent for the duty he had to perform; (3) that the fact of his incompetency was known to the defendant, or that it or its manager or superintendents, acquired a knowledge of it during his employment and before the accident, or by due diligence could have learned of his incompetency. *Snodgrass v. Carnegie Steel Co.,* 173 Pa. 228, 33 Atl. 1104. Negligence such as unfits a person for service, or such as renders it negligent in a master to retain him in the employment, must be habitual, rather than occasional or of such a character as to render it imprudent to retain him in service.  A single exceptional act will not prove a person incapable or negligent.—*Conrad v. Gray,* 109 Ala. 130, 19 South. 398; *Baltimore Elevator Co. v. Neal,* 65 Md. 438, 5 Atl. 338; *Harvey v. Railway Co.,* 88 N. Y. 481; *Couch v. Coal Co.,* 46 Iowa 17; *Huffman v. Ry. Co.,* 78 Mo. 50.  It is also a rule of the common law, still in force, that if the servant knew of the incompetency of the offending servant as well as the master, or had equal knowledge, and, notwithstanding such knowledge, continued in the employment without objection, he waives the negligence of the master in this respect.—*Laning v. Railway Co., supra; Wright v. Railway Co.,* 25 N. Y. 566; *Mad River & L. E. R. R. v. Barber,* 5 Ohio St. 563, 67 Am. Dec. 312.

The grounds of the demurrer to the effect that the complaint fails to aver that the fellow servant, Lewis,

had any superintendence intrusted to him, or that it fails to aver any of the essentials to a recovery under the employers' liability act (section 1749 of the Code of 1896), were without merit. The complaint avers a common-law liability for injuries due to the negligence of Archibald Lewis, resulting from the incompetency of Lewis, and that defendant knew of his incompetency and negligently retained him. If the plaintiff knew of the incompetency of Lewis before going into the shaft, that would be defensive matter, and it is not necessary for the complaint to negative the fact. Nor was it necessary for the complainant, in charging negligence, to state the quo modo.—*Chambliss' Case,* 97 Ala. 171, 11 South. 897;*Davis' Case,* 92 Ala. 300, 9 South. 252, 25 Am. St. Rep. 47;*K. C., M. & B. R. R. Co. v. Sanders,* 98 Ala. 293, 13 South. 57; *Conrad v. Gray,* 109 Ala. 130, 19 South. 398. The demurrers to the first count were properly overruled. The demurrers to the third count are the same as those filed to the first, and simply seek to "thresh over old straw," and were properly overruled.

The ninth count charges the defendant with negligence for the failure to exercise reasonable diligence to inform itself of the unfitness of the said Lewis, and it was not necessary to lay the failure to some one intrusted with the management and superintendence. The demurrers to the count were properly overruled. The demurrers to the eleventh count have been treated under the first and ninth counts, and were properly overruled.

The demurrers to the twelfth and thirteenth counts as amended were properly overruled. We do not understand the amended counts to be a departure from the original cause of action.

The demurrers to pleas 6, 8, and 9 were properly sustained. The fact that the plaintiff stated that he had only a small amount of work to do and he would be through with it in a few minutes did not justify said Lewis in causing said elevator to descend in the shaft, within an hour, without having first ascertaining whether the plaintiff was in said shaft, as the plea does not aver that the statement was made to Lewis or any one else authorized to act upon the statement.—*Williamson*

*v. Jones,* (W. Va.) 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891.

The seventh plea was subject to the demurrer interposed. The fact that the plaintiff told the operator that the descent of the elevator at the time Pelzer wished to go up to the first floor could be made was no license to the operator to continue to come down or to go to the basement.

Pleas 10 and 11 set up no defense to the action, and the demurrers were properly sustained. The complaint charges the elevator boy, Lewis, with being incompetent because of carelessness and inattention, and the fact that he disobeyed the defendant's orders is but an averment of his unfitness and does not relieve the defendant from liability, as the charge against the defendant is for keeping an incompetent servant. If he disobeyed his master's instructions, that was but an act of inattention to his duties. The authority cited and relied upon by counsel for appellant to sustain the position that the master is not liable for injuries resulting from disobedience of his orders.— (*Laughran v. Brewer,* 113 Ala. 518, 21 South 415) has no application to this case. In that case the very gist of the action was the act or omission, made or done in obedience to the rules of the master and under the employers' liability act. The case at bar is under the common-law liability for keeping an incompetent servant, and disobedience to orders is but an act of incompetency.

It is insisted, however, that no sufficient ground of demurrer was interposed to the tenth plea. The grounds interposed to the fourth plea were set up to the tenth, and we think the fourth ground thereof is sufficient to test the sufficiency of the plea. It is harmless error to improperly sustain a demurrer to certain pleas, where the defendant has the benefit of all the matters set up therein under pleas remaining.—*Taylor v. Corley,* 113 Ala. 580, 21 South. 404; *Smith v. Heineman,* 118 Ala. 195, 24 South. 364, 72 Am. St. Rep. 150; *Booth v. Dexter,* 118 Ala. Ala. 369, 24 South. 405; *Farley Bank v. Henderson,* 118 Ala. 441, 24 South. 428. The defendant got the full benefit of plea 12 under the general issue.

[First National Bank of Montgomery v. Chandler.]

Pleas 13 and 14 simply aver that the plaintiff knew of the said Lewis' ability to operate the elevator, but does not charge him with knowledge of the incompetency of the said Lewis, due to his carelessness and inattention, and the demurrers were properly sustained.

The objection to the question to the witness Hastings, "Was Lewis a wide-awake, attentive boy during the time he was engaged in his duties?" was certainly not based upon a good ground, "that it called for an opinion and the witness was not an expert." We do not accept it as calling for an opinion; but, if it did, it related to a subject that did not require expert evidence as to an opinion. It requires no expert to tell how a person looks—if sleepy or awake, if mad or in a good humor, if excited or quiet and composed. Nor did the court err in excluding the answer. The answer, if an opinion, was but the mere shorthand rendering of the facts, and could be given, subject to cross-examination as to the facts on which it is based.—*South & North Alabama R. R. v. McLendon,* 63 Ala. 266; *Raisler v. Springer,* 38 Ala. 703, 82 Am. Dec. 736; *Avary v. Searcy,* 50 Ala. 54; Wharton on Evidence, § 510. Nor did the trial court err in reference to the similar question to and answer of the witness Cody.

The motion to exclude the testimony of Murphy that he had been informed of the conduct of Lewis was properly overruled. Murphy had testified that he had charge of the building; that Baldwin, the president, and the man who hired Lewis, told him "to look after the operation of the elevator and to take charge of Archie Lewis." It is not material that he had no authority to discharge Lewis. He had authority to look after him, and it was his duty to report his misconduct to his superior.

Charges 1 to 6, inclusive, were properly refused. The evidence made it clearly a question for the jury, and the defendant was not entitled to the general affirmative charge under any of the counts.

Charge 7 was properly refused. Even if the slipping of the brake caused the injury, the jury could have found that the slipping of the brake was caused by the inattention or carelessness of the elevator boy Lewis.

Charge 11 was properly refused. If Murphy told Bryant to go to the basement in the elevator and take the rug

and Bryant so informed Lewis, and Lewis took the elevator down as a result of said instruction, the jury could have inferred that Lewis was negligent in making the descent without first ascertaining if plaintiff was still in the shaft.

Charge 8 was properly refused. Even if plaintiff did tell Lewis to bring the elevator down, it was no license to him to continue to do so. Besides, the plaintiff testified that he told him not to come after that one time.

Charge 10 was properly refused. If not otherwise bad, it is hypothesized on the running of the elevator to the first floor, when the evidence shows that the injury was caused by running it below the first floor and upon the plaintiff while in the basement.

Charge 9 was properly refused. The injury may have been caused by Murphy telling Bryant to take the carpet to the basement on the elevator, yet the jury might infer that Lewis was negligent in going down with the elevator. It is true the charge asks a finding for the defendant if "the injury was caused any other way than by the neglect of Lewis." But these are alternative and disjunctive postulations, all of which ignore the negligence of Lewis except the last one.

There was no error in rendering the verdict for $3,500. There is nothing in the contention that it was in excess of the sum claimed in counts 12 and 13. Said counts were for $15,000, and were amended after demurrer was sustained by setting out special damages, and which did not contain in the estimate anything for future incapacity. Besides, if said counts did claim less than the amount recovered, there were other counts that claimed more, and the verdict was referable to the good counts.

In view of the evidence, practically undisputed as to the character of injuries sustained, and which are of a permanent nature, we do not consider that the sum awarded was excessive. The motion for a new trial was properly overruled.

The judgment of the city court is affirmed.

McClellan, C. J., and Dowdell and Denson, JJ., concur.